THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES T. BLACK, Defendant-Appellant.

Third District   Nos. 3—89—0416, 3—90—0286 cons.

Opinion filed January 7, 1991.

305

Swengel & Swartz, of Henry (Eric S. Swartz, of counsel), for appellant.

Joseph Navarro, State's Attorney, of Ottawa (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial, the defendant, James Black, was convicted of the charge of criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(1)) and sentenced to a term of seven years' imprisonment. He appealed. While his appeal was pending, he filed a post-conviction petition. A hearing was held on the petition. We delayed determination of the direct appeal until the conclusion of the post-conviction proceeding. Subsequently, the trial court denied his prayer for relief. He also appeals that order. We have consolidated these appeals for disposition. We affirm.

On April 7, 1989, the defendant appeared in court with his attorney, Deborah Dunn, and waived his right to a jury trial. At that time, the defendant's trial was reconsolidated with that of a codefendant, Jeffrey Parcher, despite a prior severance order. Parcher was found guilty of criminal sexual assault in a bench trial. He also appealed his

conviction, and we affirmed the trial court in *People v. Parcher* (3d Dist. 1990), No. 3—89—0432 (unpublished order under Supreme Court Rule 23).

At trial, the victim testified she was at home on the evening of August 18, 1988, when she received a phone call from Parcher asking if she would like to go riding around in his truck. She agreed to go and, shortly thereafter, joined Parcher, the defendant, and a third male subject in Parcher's truck. The victim indicated she had known Parcher for about a month prior to the phone call but that she had never been out alone with him or ever on a date with him. At the time, she considered Parcher a friend, but not a boyfriend. She further testified she knew the defendant for approximately three or four years; she used to baby-sit the defendant's children. The four proceeded to drive around for awhile and eventually dropped off the third male.

The defendant, the victim, and Parcher then drove to the Streator Country Club. There, the defendant and Parcher wanted to go swimming. The defendant climbed a fence and sneaked into the pool area. Parcher and the victim followed suit. The defendant and Parcher then proceeded to jump into the pool and take their clothes off. The nude men then swam to where the victim was standing outside the pool. Parcher grabbed her ankles and she fell into the pool.

After falling into the pool, Parcher held the victim as the defendant tried to unzip her pants. After struggling with the victim, the defendant pulled her pants down, pulled her tampon out and threw it to the side of the pool, pried her legs apart, and placed his penis into her vagina. The defendant then stated it was Parcher's turn whereby Parcher proceeded to place his penis into her vagina. The victim immediately left the pool area and went to her sister's house.

Tara Dimming, the victim's sister, testified the victim came to her home on August 19, crying, upset, and wet. She stated the victim told her that she was raped.

After reporting the alleged rape, the victim was taken to the hospital where a rape kit was prepared. The Joliet lab concluded seminal material taken from the victim could have come from Parcher and the defendant or just the defendant. Also included in the rape kit was a brief medical history of the victim which included statements she made about the assault to the examining physician. The State did not use these statements at trial. The defendant, meanwhile, failed to request this information from the State and failed to subpoena the hospital for the records.

The report showed the victim stated that one of the guys involved

in the assault she has "gone with a couple of times." She also stated both men were drunk. At trial, the victim stated she did not date Parcher. She also did not testify to both men being drunk.

Parcher testified he met the victim at a party in May of 1988. On that occasion, they went for a ride in his truck and engaged in sexual intercourse. They subsequently saw each other about every other week and continued to engage in sexual intercourse.

Regarding the incident at the pool, Parcher stated that he, the victim, and the defendant stopped at the pool to go swimming. He and the defendant proceeded to get undressed. Laughingly, they pulled the victim into the pool, whereupon she and Parcher began kissing. The defendant then approached the two and joked about removing the victim's clothes. She permitted the defendant to do so but became angry when he removed her tampon. Parcher then swam off but could see the defendant feeling the victim's breasts and hear him calling her names. The defendant then gave up and sent the victim over to Parcher. The victim was crying, so he started kissing her but stopped when she asked him to. She then left but came back to get her purse and a ride to her sister's house.

In addition, a defense witness, Brian Crouch, testified he previously dated the victim and that she admitted sleeping with Parcher. This charge was vehemently denied by the victim in rebuttal.

The defendant first argues he is entitled to a new trial due to a discovery violation committed by the State. He specifically contends the State's failure to produce a medical report containing statements made by the victim violated his right to due process. He alleges the statements could have been used to impeach the victim and as such were necessary to him in his defense. He therefore concludes the State's failure to produce the document resulted in his being prejudiced.

The trial court, after the defendant presented these arguments at his post-conviction petition hearing, denied his prayer for relief. The trial court found no constitutional violation and found the evidence would not have changed the outcome of the trial.

■■ ■ A prosecutor's failure to disclose evidence which the defense might have used to impeach a witness is error. (*People v. King* (1985), 140 Ill. App. 3d 937, 486 N.E.2d 978.) However, such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. (*United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.) Evidence is material only if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different.

(*People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579, citing *United States v. Bagley* (1985), 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375.) The undisclosed evidence must be evaluated in the context of the entire record to determine if it creates a reasonable doubt that did not otherwise exist. *People v. King* (1985), 140 Ill. App. 3d 937, 486 N.E.2d 978.

The defendant suggests the trier of fact, in this case the trial court, was deprived of the opportunity to assess the degree of the impeachment of the victim's credibility. We disagree. The defendant, by coupling the testimony of Brian Crouch with Parcher's testimony, sufficiently presented this boyfriend/girlfriend impeachment angle to the trial court without success.

■ We find no reasonable probability that this evidence would have changed the outcome of the defendant's trial, since the evidence overwhelmingly supported the decision of the trier of fact and the minor inconsistencies contained within the report cast very little doubt upon the credibility of the victim. Apparently, the defendant's use of the victim's statements would be to show that she described her relationship with Parcher at trial somewhat differently than what she said at the hospital and to the investigator following the incident. The testimony of Crouch, however, allows for a similar impeachable inference to be made, and the failure to produce the other statements is not prejudicial error.

The defendant next asserts his waiver of a jury trial was not voluntarily made due to the improper advice of his trial counsel. The trial court found the defendant's jury trial waiver to be knowingly and understandingly made and was a matter of sound trial strategy.

The record shows at the hearing on his post-conviction petition the defendant testified he was advised by Dunn to not proceed to a jury trial in order to prevent the State from informing the jury of his prior convictions. He was also advised that if he proceeded to a bench trial, he would not have to testify and the State would then be unable to divulge the prior convictions. The defendant alleges he was not told he could proceed to a jury trial and still not testify. The defendant also testified he was told that if he proceeded to a jury trial and was found guilty, he would be given the maximum sentence of 15 years. The defendant essentially maintains Dunn, an attorney with no prior jury trial experience, made gross misrepresentations to the defendant thereby coercing him into waiving his right to a jury trial.

Dunn testified she could not recall the specifics of the conversation between herself and the defendant regarding the decision to waive a jury trial. In addition, she stated she had no personal knowl-

edge of the trial court's sentencing practices.

Dunn also explained the reasoning behind the decision to waive the jury trial. She noted at the time the defendant waived the jury trial, codefendant Parcher had a jury demand on file. Since Parcher was not waiving a jury trial, the two jury trials were going to be severed. Dunn, due to certain factors, found it advantageous to have Parcher's testimony at the defendant's trial. She therefore believed to ensure the availability of Parcher's testimony the defendant should waive a jury trial.

Furthermore, she questioned the defendant's credibility in a jury trial setting. She related she would have a difficult time explaining why the defendant, a married man, would leave his wife and children at home in the middle of the night to go carousing with three teenagers (one being his children's babysitter), the fact that the defendant pulled down the victim's pants and pulled out her tampon, and that he had thought about having sex with her. Dunn believed the best available defense was to accept Parcher's testimony relating to the events on the night in question and to use the testimony in an attempt to exonerate the defendant.

■ For a jury waiver to be valid, it must be knowingly and understandingly made. (Ill. Rev. Stat. 1989, ch. 38, par. 103—6.) However, there is no precise formula for determining whether a jury waiver is knowingly and understandingly made because the decision to do so necessarily depends upon the facts and circumstances of each case. *People v. Crespo* (1983), 118 Ill. App. 3d 815, 455 N.E.2d 854.

Here, the defendant asserts he was prejudiced by the advice of trial counsel. He argues trial counsel never told him that he could request a jury trial and still not have to testify, thereby precluding the State from introducing his prior convictions. The defendant, citing *People v. Correa* (1985), 108 Ill. 2d 541, 485 N.E.2d 307, argues the appropriate standard in reviewing trial counsel's conduct is whether the advice was within the range of competence demanded of attorneys in criminal cases.

■ However, the United States Supreme Court in *Hill v. Lockhart* (1985), 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366, found the two-part *Strickland* test to be the appropriate standard measure in determining the effectiveness of counsel in guilty plea settings as well as trial proceedings. Under *Strickland,* the defendant is required to prove: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466

U.S. 668, 687-88, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068.) In essence, prejudice must be proved. *Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067-68.

■ In the instant case, the defendant suggests Dunn failed to satisfy the *Strickland* test by allegedly failing to tell him that he could proceed to a jury trial without having to testify. The record discloses, however, the decision to waive a jury trial was based on sound trial strategy and satisfied the *Strickland* test.

For these reasons, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

BARRY and McCUSKEY, JJ., concur.