# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Hughes, 2011 IL App (2d) 090992**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACKIE E. HUGHES, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-0992 |
| Filed | July 19, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court had jurisdiction under the revestment doctrine to accept defendant's guilty plea to aggravated criminal sexual abuse after the State nol-prossed that count, and the trial court's failure to advise defendant of the collateral consequence that the plea could be used as a basis for a sexually-violent-person petition did not render the plea involuntary. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 99-CF-2426; the Hon. Victoria A. Rossetti, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Darren E. Miller, both of State Appellate
Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Stephen E. Norris and
Sharon Shanahan, both of State's Attorneys Appellate Prosecutor's
Office, of counsel), for the People.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Jackie E. Hughes, appeals an order of the circuit court of Lake County denying his motion to vacate a plea of guilty he entered to one count of aggravated criminal sexual abuse (720 ILCS 5/12-16 (West 1998)). Defendant raises two issues before this court. First, he contends that his plea is void because, before he entered it, the State had nol-prossed the count to which he pleaded guilty. Second, defendant argues that his plea was not voluntary because he had not been informed that it could be used as the basis for filing a petition to have him declared a sexually violent person. We find neither of defendant's arguments well founded; therefore, we affirm.

¶ 2    In August 1999, defendant was charged with 10 counts of various sexual offenses, which included 5 counts of aggravated criminal sexual abuse and 5 counts of predatory criminal sexual assault. In December of that year, the State also filed a petition seeking to declare defendant a sexually dangerous person. Subsequently, the State nol-prossed counts I through IV and count VI. In August 2000, defendant was found to be a sexually dangerous person. In January 2001, the trial court entered an order administratively dismissing the remaining counts and closing the case.

¶ 3    On September 26, 2006, by agreement of the parties, the trial court vacated its administrative dismissal. Pursuant to the agreement, defendant pleaded guilty to count VI. He was sentenced to 14 years' imprisonment, with credit for time served. Defendant understood that the Department of Corrections would also calculate good-conduct credit. The State withdrew the petition under which defendant had been adjudicated a sexually dangerous person. However, on October 10, 2006, defendant was examined (the record is unclear as to who examined defendant, though it is apparent that it was some sort of mental health professional), and the State filed a sexually-violent-person petition. This prompted defendant to move to withdraw his plea. At the hearing on that motion, defendant testified that it was his understanding that, if he pleaded guilty, he would be allowed to go home after his good-conduct credit was applied and the matter would be disposed of completely. He stated that, if he had not believed that his plea would bring this matter to an end, he would not have entered it. The attorney who represented defendant at the time he entered the plea

-2-

testified that he never discussed with defendant the possibility that the State would subsequently file a petition to have defendant declared a sexually violent person. The trial court denied defendant's motion, and this appeal followed.

¶ 4        This appeal presents two relatively narrow questions of law. It is well established that "[w]hether a judgment is void is a question of law." *People v. Rodriguez*, 355 Ill. App. 3d 290, 293-94 (2005). Generally, whether a defendant should be allowed to withdraw a guilty plea is a decision within the discretion of the trial court that will not be disturbed absent an abuse of that discretion. *People v. Manning*, 227 Ill. 2d 403, 411-12 (2008). However, whether a consequence of a guilty plea is collateral or direct such that a defendant must be informed of it prior to entering a plea is a question of law. *People v. Frison*, 365 Ill. App. 3d 932, 934 (2006); *People v. Norris*, 328 Ill. App. 3d 994, 997 (2002). As we are confronted with issues of law, our review is *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010). We will discuss additional facts necessary to the resolution of these issues in the course of analyzing them.

¶ 5                        I. WHETHER DEFENDANT'S PLEA IS VOID

¶ 6        We turn first to defendant's argument that his plea is void. Defendant begins by pointing out that the State had nol-prossed the charge to which he pleaded guilty (at oral argument, defense counsel agreed that there had been a showing of probable cause when defendant was originally indicted). He then notes that constitutionally, a felony prosecution must be initiated by an indictment or a preliminary hearing. *People v. Stafford*, 325 Ill. App. 3d 1069, 1073 (2001) ("The Illinois Constitution provides that no person shall be prosecuted for a crime punishable by death or imprisonment unless the charge has been brought by grand jury indictment or pursuant to a preliminary hearing. Ill. Const. 1970, art. I, § 7."). "The United States Supreme Court has indicated that pursuant to the fifth amendment, a court cannot permit a defendant to be tried on charges that are not brought in an indictment ***." *Id.* (citing *Stirone v. United States*, 361 U.S. 212, 215-17 (1960)).

¶ 7        When a charge is nol-prossed, defendant continues, the State has formally indicated that it is unwilling to prosecute the case. *Id.* This action has the same effect as moving to dismiss. *People v. Gill*, 379 Ill. App. 3d 1000, 1003 (2008). Hence, no criminal charges remain pending against the defendant. *People v. Watson*, 394 Ill. 177, 179 (1946). In order to reinstate the prosecution, the State must file a new charging instrument. *People v. Woolsey*, 139 Ill. 2d 157, 168 (1990). A trial court has no jurisdiction over a dismissed charge. *People v. Fako*, 312 Ill. App. 3d 313, 316 (2000). Thus far, we would agree with defendant. Indeed, the State would as well, as it acknowledges that "[a]s a general rule, defendant would be correct." After the State nol-prossed the count to which defendant purportedly pleaded, there was nothing to which defendant could have pleaded.

¶ 8        We are not able to discern from the record why the State proceeded in the manner that it did. Nevertheless, the State invokes what is known as the revestment doctrine and contends that the general rule should not apply in this case. Under this doctrine, "litigants may revest a court which has general jurisdiction over the matter with both personal and subject matter jurisdiction over the particular cause even after the 30-day period following final judgment during which post-judgment motions must ordinarily be filed." *People v.*

*Kaeding*, 98 Ill. 2d 237, 240 (1983). This rule applies if the parties "actively participate without objection in proceedings which are inconsistent with the merits of the prior judgment." *Id.* at 241. Revestment depends not on the consent of the parties but on their active participation in further proceedings. *People v. Montiel*, 365 Ill. App. 3d 601, 605 (2006). Thus, in *People v. Zoph*, 381 Ill. App. 3d 435, 450 (2008), this court stated, "[T]his court has consistently maintained that the adverse party's active participation in a proceeding that is inconsistent with the merits of the prior judgment works to revest jurisdiction in the trial court ***." We note that, like when a charge is nol-prossed, a final judgment leaves nothing pending between the parties. See *People v. Rozborski*, 323 Ill. App. 3d 215, 220 (2001) ("This conclusion flows logically from the general definition of a 'final judgment' as one that terminates the litigation on the merits and leaves nothing to be done but to proceed to execution."); *People v. Lillie*, 79 Ill. App. 2d 174, 178 (1967) ("[T]he judicial function terminates upon the judgment's becoming final ***.").

¶ 9      In this case, the parties clearly participated in proceedings that were inconsistent with the merits of the prior disposition of the matter. The parties presented an agreed disposition to the trial court. Part of the agreement involved the trial court vacating its administrative dismissal of the case. The parties further agreed that defendant would plead guilty to count VI of the indictment. The trial court admonished defendant regarding his plea. Defendant stipulated to the factual basis for the plea, which the State had recited. Defendant indicated that he wished to plead guilty. Defendant stated that he agreed to the sentence of 14 years. The State withdrew the petition pursuant to which defendant had been adjudicated a sexually dangerous person.

¶ 10      We find considerable guidance for the resolution of this case in *People v. Bannister*, 236 Ill. 2d 1, 10 (2009). The defendant in *Bannister* had successfully challenged his earlier conviction and secured a new trial. The sole witness to give direct evidence against the defendant in his first trial had recanted his testimony. Accordingly, the State made a deal with one of the defendant's codefendants from his first trial, who had previously been convicted of two murders and sentenced to imprisonment for the rest of his natural life. As part of the agreement, the former codefendant would provide testimony against the defendant and his sentence would be vacated. He would then plead guilty to one count of murder, and the State would nol-pros the other count of which he had been convicted. The defendant challenged the validity of the plea agreement. The supreme court explained:

> "Further, the defendant's argument that the State lacked the authority to enter into a plea agreement with Johnson is unavailing. Under the revestment doctrine, litigants may revest a trial court with personal and subject matter jurisdiction, after the 30-day period following final judgment, if they actively participate in proceedings that are inconsistent with the merits of the prior judgment." *Bannister*, 236 Ill. 2d at 10.

Thus, like defendant in this case, the former codefendant in *Bannister* could plead to a count over which the trial court acquired jurisdiction through the revestment doctrine.

¶ 11      Accordingly, we reject defendant's contention that his plea is void because the trial court lacked jurisdiction to accept it.

¶ 12               II. WHETHER DEFENDANT'S PLEA WAS VOLUNTARY

¶ 13    Defendant also argues that his plea was not voluntary. He contends that he should have been advised that the State could file a sexually-violent-person petition (see 725 ILCS 207/15 (West 2006)) based upon his plea. The State in fact filed such a petition about two weeks after defendant entered the plea.

¶ 14    It is axiomatic that a plea is valid only if it was voluntary and intelligent. *People v. Morris*, 236 Ill. 2d 345, 360 (2010) (citing *People v. Wills*, 61 Ill. 2d 105, 110 (1975)). Generally, for a plea to be deemed voluntary and intelligent, a defendant must be fully aware of the direct consequences of entering the plea. *People v. Williams*, 188 Ill. 2d 365, 371 (1999). However, a defendant's knowledge–or lack thereof–of the collateral consequences of a plea has no bearing on the validity of the plea. *Id.* Direct consequences are those that are definite and immediate and that flow automatically from the plea. *People v. Frison*, 365 Ill. App. 3d 932, 934 (2006). They are consequences that the trial judge can impose. *Williams*, 188 Ill. 2d at 372.

¶ 15    Collateral consequences, on the other hand, are beyond the control of the trial court and do not affect the length of the sentence imposed upon the defendant. *Frison*, 365 Ill. App. 3d at 934. They are future consequences that may be known but do not follow the plea with certainty. *People v. Norris*, 328 Ill. App. 3d 994, 997 (2002). They may result from actions taken by the State's Attorney or some other agency that is beyond the trial court's control. *Id.* Collateral consequences are things like " ' "loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, *or anything else.*" ' " (Emphasis in original.) *Williams*, 188 Ill. 2d at 372-73 (quoting *Cox v. State*, 819 P.2d 1241, 1243 (Kan. Ct. App. 1991), quoting *State v. Heitzman*, 508 A.2d 1161, 1164 (N.J. Super. Ct. App. Div. 1986), *aff'd*, 527 A.2d 439 (N.J. 1987)). In *People v. Castano*, 392 Ill. App. 3d 956, 959-60 (2009), for example, the court held that eligibility for good-conduct credit is a collateral consequence of a guilty plea because it does not have a "definite, immediate or automatic effect on the sentence imposed," and it "depends upon a prisoner's good conduct" so "is not guaranteed in any amount."

¶ 16    Thus far, resolution of this issue would be simple. Whether a defendant is declared a sexually violent person is not a definite, immediate, or automatic consequence of a guilty plea. Rather, it is dependent, *inter alia*, on the State filing a petition to initiate the process. Indeed, two of our sister courts have already held that the possibility that the State will file a sexually-violent-person petition is a collateral consequence of a guilty plea. See *Norris*, 328 Ill. App. 3d at 997 ("The penalty imposed as a direct consequence of defendant's guilty plea did not automatically include any period of commitment under either the Sexually Dangerous Persons [Act] or the Sexually Violent Persons Commitment Act. Consequently, any such potential commitment must be considered a collateral consequence which the trial court was not required to include in its admonishments prior to accepting defendant's guilty pleas."); *In re Detention of Lindsay*, 333 Ill. App. 3d 474, 477 (2002). However, these cases were decided before the recent United States Supreme Court case of *Padilla v. Kentucky*, 559 U.S. ___, 130 S. Ct. 1473 (2010), upon which defendant relies.

¶ 17    The issue in *Padilla* was whether prior to the entry of a guilty plea an attorney was required to inform his client of the possibility of deportation. *Id.* at ___, 130 S. Ct. at 1478.

The Supreme Court noted that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' " of counsel. *Id.* at \_\_\_, 130 S. Ct. at 1481. However, the Court expressly disavowed that it was considering whether the distinction, generally speaking, was an appropriate one. *Id.* at \_\_\_, 130 S. Ct. at 1481. It then noted that deportation, though not a criminal sanction, was a "particularly severe 'penalty' " and "intimately related to the criminal process." *Id.* at \_\_\_, 130 S. Ct. at 1481 (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893)). Moreover, "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.* at \_\_\_, 130 S. Ct. at 1481. Thus, according to the Court, it is difficult to divorce the risk of deportation from the plea and resulting conviction. *Id.* at \_\_\_, 130 S. Ct. at 1481. The Court therefore found the collateral-direct consequence distinction to be ill suited to assessing counsel's performance in this context. *Id.* at \_\_\_, 130 S. Ct. at 1482. That is, advice regarding deportation should not be "categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at \_\_\_, 130 S. Ct. at 1482. To the extent that the validity of a guilty plea depends on the advice of counsel, as defendant argues here (see *People v. Huante*, 143 Ill. 2d 61, 69-70 (1991)), it is obviously a relevant consideration in assessing the plea.

¶ 18    The Court went on to find that defense counsel in *Padilla* should have advised the defendant of the immigration consequences of his plea. In so doing, the Court relied on three primary considerations. First, it noted that prevailing professional norms, as reflected in standards articulated by organizations such as the American Bar Association (ABA), support "the view that counsel must advise [his or] her client regarding the risk of deportation." *Padilla*, 559 U.S. at \_\_\_, 130 S. Ct. at 1482. Second, the Court pointed out that avoiding deportation "may be more important to the client than any potential jail sentence." (Internal quotation marks omitted.) *Id.* at \_\_\_, 130 S. Ct. at 1483. Third, the Court noted that the terms of the statute were easily ascertainable and that "deportation was presumptively mandatory." *Id.* at \_\_\_, 130 S. Ct. at 1483.

¶ 19    In the present case, we initially note that, unlike the defendant in *Padilla*, defendant identifies no professional standards promulgated by any organization such as the ABA that support the notion that an attorney must advise a client that a sexually-violent-person petition might be filed. Defendant also does not attempt to show that commitment was "presumptively mandatory," as deportation was in *Padilla*. See *Id.* at \_\_\_, 130 S. Ct. at 1483. Instead, defendant relies solely on the proposition that the filing of a sexually-violent-person petition would have great consequences for defendant. Like deportation was for the defendant in *Padilla*, this is a matter of great importance to defendant. However, the importance of the issue to a defendant is but one consideration. As defendant has failed to establish the presence of the other two factors the Supreme Court expressly relied upon in *Padilla*, that case provides only general guidance here.

¶ 20    Moreover, as the Supreme Court made clear in *Padilla*, even in the context of deportation, the mere import of the issue is not sufficient, in itself, to place anything but the most minimal duty upon counsel to give advice regarding the issue. In *Padilla*, 559 U.S. at \_\_\_, 130 S. Ct. at 1483, the Supreme Court explained:

"There will, therefore, undoubtedly be numerous situations in which the deportation

-6-

consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice Alito), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."

In this case, defendant answered "[y]es" when asked, "And now you are saying you had a discussion with [your attorney] about [a sexually-violent-person petition]?" Thus, assuming, *arguendo*, that the importance of the issue to defendant was sufficient to place some duty upon counsel, the record indicates that there was at least some discussion of the issue between defendant and counsel. We do not know the contents of that conversation; however, it is defendant's burden, as the appellant, to establish error on appeal (*TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008)). Thus, we cannot assume that the conversation was insufficient for counsel to have fulfilled his duty to defendant or that any prejudice accrued to defendant. Moreover, defendant has not attempted to establish that the other factors present in *Padilla* are present here (*i.e.*, certitude of occurrence and the presence of relevant professional norms).

¶ 21      Defendant calls our attention to the decision of the New Jersey Supreme Court in *State v. Bellamy*, 835 A.2d 1231 (N.J. 2003), a case that predated *Padilla*. The *Bellamy* court first held that commitment pursuant to New Jersey's Sexually Violent Predator Act was not a direct consequence of a plea of guilty as it did not flow automatically from a plea. *Id.* at 1238. The court then, citing fundamental fairness, held that a defendant must be informed of the possibility of commitment given the magnitude of this consequence. *Id.* at 1238-39. As we have explained above, the magnitude of the consequence, while relevant to the *Padilla* Court, was but one of the factors the Court relied upon in placing a duty on counsel to give advice on a matter traditionally regarded as a collateral consequence of a guilty plea. As *Bellamy* identifies no additional factor beyond what is discussed in *Padilla*, it provides no additional guidance in resolving the question before us.

¶ 22      Finally, we note that the *Padilla* Court expressly addressed the immigration consequences of a guilty plea and, in support of its decision, provided a detailed exegesis of immigration law. See *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1478-84. Thus, it is not entirely clear whether the Court intended *Padilla* to apply in other contexts. See *Brown v. Goodwin*, No. 09-211, 2010 WL 1930574, at *13 (D.N.J. May 11, 2010) ("[W]hile *Padilla*'s implications for cases involving removal are clear, the holding of *Padilla* seems not importable–either entirely or, at the very least, not readily importable–into scenarios involving collateral consequences other than deportation."); see also *Zapata-Banda v. United States*, Nos. B: 10-256, B: 09-PO-2487, 2011 WL 1113586, at *9 (S.D. Tex. Mar. 7, 2011) (following Brown); *Maxwell v. Larkins*, No. 4: 08 CV 1986 DDN, 2010 WL 2680333, at *10 (E.D. Mo. July 1, 2010) ("Commitment as a [sexually violent person] does not implicate the Supreme Court's concerns in *Padilla*.") In any event, our obligation is to follow the precedent of the Court; we are not obligated to extend it. In *People v. Wagener*, 196 Ill. 2d 269, 287 (2001), a case considering whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applied to consecutive sentencing, our supreme court explained:

"We are bound to follow the United States Supreme Court's interpretation of the

Constitution of the United States. [Citations.] But we are not bound to extend the decisions of the Court to arenas which it did not purport to address, which indeed it specifically disavowed addressing, in order to find unconstitutional a law of this state. This is especially true where, as here, to do so would require us to overrule settled law in this state."

The court thus declined to apply the *Apprendi* rule, which arose in the context of extended sentences, to a statute that made consecutive sentences mandatory. *Wagener*, 196 Ill. 2d at 287-88. In *Padilla*, besides closely tying its decision to immigration law, the Court expressly refrained from considering whether the traditional distinction between collateral and direct consequences is an appropriate one, "because of the unique nature of deportation." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1481. Just as consecutive sentencing was held to be outside the scope of *Apprendi*, we hold that civil commitment as a sexually violent person is outside the scope of *Padilla*. We simply cannot read *Padilla* as upsetting the traditional collateral-direct consequence distinction outside the context of deportation, and we decline to extend *Padilla* in such a manner.

¶ 23                                    III. CONCLUSION

¶ 24        In light of the foregoing, the order of the circuit court of Lake County denying defendant's motion to withdraw his guilty plea is affirmed.

¶ 25        Affirmed.