# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Presley*, 2012 IL App (2d) 100617

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES PRESLEY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0617 |
| Filed | May 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court affirmed the entry of a directed finding for the State on defendant's motion to withdraw his guilty plea to aggravated criminal sexual abuse on the ground that his attorney failed to advise him that a guilty plea would require lifetime registration as a sex offender, since, even assuming the deficiency prong of *Strickland* was satisfied, defendant's claim that he would not have pled guilty if he was advised of the registration requirement was insufficient to establish prejudice, especially in view of the admonition of *Padilla* that prejudice required defendant to show that a decision to reject a plea bargain would have been rational under the circumstances. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 07-CF-430; the Hon. George J. Bakalis, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

James K. Leven, of Chicago, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Stephen E. Norris and Patrick D. Daly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BOWMAN delivered the judgment of the court, with opinion.

Presiding Justice Jorgensen and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, James Presley, entered an open guilty plea to one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2006)). Defendant subsequently moved to withdraw his guilty plea based on ineffective assistance of counsel; namely, his attorney's failure to advise him that his guilty plea would result in lifetime sex offender registration. Following a hearing on defendant's motion, the trial court granted a directed finding in favor of the State. Defendant appeals that finding, and we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On March 27, 2007, defendant was charged by indictment with two counts of aggravated criminal sexual abuse. The charges alleged that defendant, who was at least 5 years older than the victim, S.D., knowingly committed an act of sexual conduct with S.D., who was at least 13 years of age but was under 17 years of age, in that he placed his hand on her breast and his finger in her sex organ.

¶ 4     Due to a variety of issues and ongoing plea negotiations, the matter was continued on numerous occasions. On April 7, 2009, the parties appeared in court as the case was set for trial. Defense attorney Ronald Merel stated that, after extensive communications with defendant and the State, defendant had wished to enter a plea, as recently as the day before. However, defendant, who was in psychiatric care, had just changed his mind after a meeting with his doctor and now wished to have a different attorney appointed to represent him. The court refused "to do that," noting that for one reason or another the case had been set for trial seven times. Defendant then entered a plea of guilty to count II, a Class 2 offense, and the State agreed to nol-pros count I. The court admonished defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997) but did not mention that, as a consequence of his plea, he would be subject to lifetime registration as a sex offender under the Sex Offender Registration Act (Act). See 730 ILCS 150/1 *et seq.* (West 2006).

-2-

¶ 5     As a factual basis for the plea, S.D. would testify that she met defendant around Christmas in 2006. At the time, S.D. told defendant that she was 16 years old even though she was only 14 years old. Defendant told her that he was 24 years old. In early January 2007, S.D. arranged to meet with defendant. He picked her up in his car, and they drove to a side street in Elmhurst. While in the car, defendant placed his finger in S.D.'s sex organ. Elmhurst detective Mike Campise would testify that he met twice with defendant in February 2007. Initially, defendant gave one version of events to the detective. Ultimately, defendant admitted to placing his finger in S.D.'s sex organ. Defendant thought that S.D. was 16 years old. The court accepted the plea and entered a finding of guilty. The matter was continued for sentencing.

¶ 6     As part of the presentence investigation, defendant was interviewed by Dr. Leslie Kane on several occasions. On June 30, 2009, at a status hearing, defense attorney Merel explained to the court what had transpired between defendant and Dr. Kane. According to defense attorney Merel, Dr. Kane told defendant that she did not believe that "the potential sentence of branding [defendant] on a plea of guilty as a lifetime sexual offender was a fair and appropriate sentence." Defense attorney Merel continued, "We know that the plea of guilty was entered. And it was entered with the idea of [defendant] being aware of what the consequences [were]. However, his discussions with Dr. Kane during their interviews, I guess, potentially changed his mind about the plea that was entered to this charge on April 7." Defense attorney Merel went on to say that he had spoken with Dr. Kane, who confirmed that she had communicated to defendant the idea of withdrawing his plea. The court noted that Dr. Kane had found defendant to be a very low risk to repeat. However, the court further noted that Dr. Kane was not in a position to give any recommendation as to sentence; her job was to evaluate him as a sex offender and predict his potential for reoffending. Still, the court recognized that defendant had the right to file a motion to withdraw his plea.

¶ 7     Defense attorney Merel advised the court that he was not sure he would continue to represent defendant; it put him in "a rather tenuous position." Defense attorney Merel explained that he had been on the case from its inception, which was nearly 2½ years earlier, and that he had several meetings with defendant and his mother. Defense attorney Merel stated:

> "And I have had several meetings, the latest of which was this past Saturday, where [defendant] and his mother and I spent several hours together. And I explained to him what we are looking at here. And as I indicated, I, in fact, had some discussion with Dr. Kane, as well, yesterday. And I am not suggesting, your Honor–and I agree wholeheartedly that her evaluations are just that, and that is to enable the Court to make a better determination of what an appropriate sentence is.

> I am pretty sure that [defendant] was aware upon entering the plea of guilty, based on my conversations with him, that, based on the plea that he was entering, that he would have to register as a lifetime sexual offender. There had been some discussions between myself and the State about certainly modifying some of the sentences. Those never came to fruition. And in fact, the actual sentence that he pled guilty to would require him to register as a lifetime sexual offender. And I believe that I imparted that to [defendant] and his mother.

What occurred during those discussions between Dr. Kane and [defendant], I was not there and I cannot comment on."

¶ 8    In August 2009, defendant obtained new counsel, defense attorney Frank Scarpino, and defense attorney Merel withdrew. Defense attorney Scarpino advised the court that he would be filing a motion to withdraw defendant's guilty plea.

¶ 9    Defense attorney Scarpino filed such a motion on October 9, 2009, alleging that defense attorney Merel was "ineffective in that he failed to fully advise [defendant] of all his obligations under a plea of guilty to a Felony Sex Offense." The State moved to strike defendant's motion, arguing that it failed to articulate a recognized basis for withdrawal of his guilty plea. At the hearing on defendant's motion, defense attorney Scarpino argued that defendant was not "apprised of all of his rights and obligations under the plea of guilty under the sex offender statute." The trial court granted the State's motion to strike on November 16, 2009. According to the court, defendant's motion did not indicate what information defendant was not apprised of in terms of pleading guilty, and it did not contain a defense to the charge.

¶ 10   The sentencing hearing occurred in November 2009. The trial court sentenced defendant to 24 months of sex offender probation and 100 days in jail, with credit for time served. Pursuant to the Act, defendant was also required to register as a lifetime sex offender.

¶ 11   On December 22, 2009, defendant filed a *pro se* motion to withdraw his guilty plea. A few months later, a third attorney, defense attorney Anthony Coco, appeared on behalf of defendant and filed a motion to withdraw defendant's guilty plea. In the motion, defendant argued that his plea "was not intelligent," because, at the time of the plea, defense attorney Merel had rendered ineffective assistance of counsel for not warning him that a guilty plea would, as a matter of law, force him to be a "life-time sexual offender registrant." In support of his position, defendant argued that the United States Supreme Court decision in *Padilla v. Kentucky*, 559 U.S. ___, 130 S. Ct. 1473 (2010), which held that defense counsel must inform the client whether the plea carries a risk of deportation, had changed the law regarding whether attorneys were obligated to advise their clients about *collateral* consequences. In other words, under *Padilla*, defense attorney Merel was obligated to advise defendant about the collateral consequence of registration, and his failure to do so rendered him ineffective.

¶ 12   The State again moved to strike defendant's motion, arguing that *Padilla* applied to deportation and not sex offender registration. This meant, according to the State, that the case law distinguishing direct consequences from collateral consequences was still in effect. Because sex offender registration was a collateral consequence of defendant's plea, the State argued, defense attorney Merel was not obligated to advise him of it and there was no basis to invalidate the plea. In addition, the State argued that defendant's motion was not supported by affidavit, despite its articulation of facts that did not appear in the record. The State pointed out that the June 30, 2009, transcript contradicted defendant's statement and illustrated that defense attorney Merel had in fact informed defendant of the collateral consequences of his plea. In response, defense attorney Coco filed his own affidavit, which averred that defendant told him that defense attorney Merel failed to advise him that his plea

-4-

could require him to register as a lifetime sex offender.

¶ 13    The parties appeared before the court to argue the State's motion to strike. The court denied the State's motion, conditioned upon defense attorney Coco filing an affidavit on behalf of defendant, which he did. In that affidavit, defendant averred that defense attorney Merel did not inform him that pleading guilty to aggravated criminal sexual abuse would force him to register as a lifetime sex offender as a matter of law. Defendant further averred that he would never have pled guilty to the charge had he known of that requirement and all the hardships that being a sex offender registrant entailed. According to defendant, he would have maintained his not-guilty plea and demanded that the State prove the charges against him.

¶ 14    A hearing on defendant's motion to withdraw his plea was held on June 11, 2010. Defendant testified as follows. Defendant, who was represented by defense attorney Merel at the time, entered a guilty plea on April 7, 2009. When they appeared in court on that date, defense attorney Merel asked the court for a continuance for another status hearing, but the court refused to allow any more status hearings. Defendant then went into a side room with defense attorney Merel, who told defendant that he needed to either go to trial or plead guilty that day. Defendant pled guilty. Defense attorney Merel told defendant that sentencing was up to the court; he never mentioned "being a lifetime registrant sex offender."

¶ 15    Defendant further testified that the possibility of registering as a sex offender came up once prior to his guilty plea on April 7, 2009. In 2008, the State made a plea offer that included 10 years' registration. Defendant had one day to think about the offer "but that's the only time it came up." Defendant was thus aware that there was such a thing as sex offender registration. When defense attorney Merel said that sentencing was up to the court, defendant had "no knowledge of it being anywhere near registration." Defense attorney Merel told defendant that he could receive probation or "sit in prison" for three to five years; "[n]o registration came up whatsoever." On the day he pled guilty, defendant was not aware of the lifetime registration requirement. Defendant "didn't even think it would come up," because "it never got mentioned up any time I talked to [defense attorney Merel] in the past two and three-quarter years of him handling [his] case, besides the one plea deal from [the State]." Had defendant known he would have to be a lifetime registrant, he would not have pled guilty on April 7. As a result of registration, defendant could not pick up his two children, ages three and six, from school. Also, he could not "live anywhere." Defendant was living in a hotel with his mother; he could not find a job. According to defendant, it had been "a lifetime of hell for the past year or seven months," and he could not obtain partial custody because he had "no case" as a "sex offender."

¶ 16    On cross-examination, defendant testified that he found out about the lifetime registration requirement on November 30, 2009, when he was sentenced. At that time, defense attorney Scarpino was representing him. With respect to defense attorney Merel, defendant denied that his mother was present when he met with him. Defendant met with Dr. Kane, who spoke with him about possible sentences if he were found guilty. Defendant admitted telling her he could receive three to five years in prison; he denied saying he was offered probation but would have to register as a sex offender. When asked if he ever brought up the subject of sex offender registration with Dr. Kane, defendant replied "I don't believe so." Defendant

admitted telling Dr. Kane that in June 2008 he was offered a plea agreement that included 10 years of registration as a sex offender. That was the only offer by the State. Defendant told defense attorney Merel that he did not want to accept the offer, and "that was never brought up again."

¶ 17    On redirect, defendant testified that there was also talk of a possible plea agreement involving an unlawful restraint charge. Defense attorney Merel told defendant that that charge had no registry requirement. On recross, defendant testified that defense attorney Merel brought up that possible plea agreement to the State, but that the State rejected it in about two minutes.

¶ 18    At this point, the State moved for a directed finding on several grounds. First, the State argued that defendant failed to establish the prejudice prong for an ineffective-assistance-of-counsel claim, because he did not set forth a claim of actual innocence or a plausible defense. According to the State, a bare allegation that he would not have pled guilty was not sufficient to establish prejudice. Second, the State attacked defendant's credibility as to whether he was aware of the lifetime registration requirement. Third, the State pointed out that defendant never alleged that defense attorney Merel gave him false information; rather, defendant alleged that he gave him no information, and the registration requirement was a collateral consequence, meaning that the failure to advise him of it could not invalidate his plea. Finally, the State argued that the *Padilla* case relied upon by defendant was limited to the special circumstances of deportation and did not apply to the sex offender registration requirement. Defendant countered the State's position by arguing that registering as a lifetime sex offender could be a worse penalty than deportation. As a result, *Padilla*, which abolished the collateral versus noncollateral consequence distinction, applied to his case.

¶ 19    The court granted the State's motion for a directed finding and denied defendant's motion to withdraw his guilty plea, ruling as follows. It agreed with the State that, in order for defendant to withdraw his guilty plea, he needed to put forth "some defense worthy of consideration in this case," which he failed to do. But even setting that issue aside, there was not "any question in [the court's] mind based on [defendant's] testimony that he was aware that there was some type of a sex offender registration requirement." According to the court, defendant "clearly understood that was part of some offer that was made to him at one point." In addition, with respect to the unlawful restraint plea negotiation, defendant "clearly understood the difference between having to register as a sex offender and not having to register as a sex offender." The court went on to say that defendant "may have not known" that the charge he eventually pled guilty to required lifetime registration, but he was aware that there would be some registration requirement. It was "really more of a matter of the degree of registration that he was required to abide by," because there was no question that he knew that he had to register in some form as a sex offender. Regarding the impact of the *Padilla* case, the court distinguished it on the basis that deportation was a particularly severe penalty whereas registration, though a severe penalty as well, had a purpose of public protection. The court reasoned that registration was a collateral consequence rather than a direct consequence of the plea, and it declined to "interpret *Padilla* to say that sex offender registration [was] now something that [was] a direct consequence of a plea of guilty to that offense."

¶ 20    Defendant timely appealed the denial of his motion to withdraw his guilty plea.

¶ 21                                II. ANALYSIS
¶ 22                            A. Standard of Review
¶ 23    In this case, defendant's motion to withdraw his guilty plea was based on the alleged ineffectiveness of defense attorney Merel. Specifically, defendant asserted that defense attorney Merel was ineffective for failing to advise him of a consequence of his plea, which was lifetime registration as a sex offender. A challenge to a guilty plea based on ineffective assistance of counsel is subject to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). Because a plea is valid only if it was voluntary and intelligent (*People v. Hughes*, 2011 IL App (2d) 090992, ¶ 14), counsel's conduct was deficient under the first prong of *Strickland* if the attorney failed to ensure that the defendant entered the plea voluntarily and intelligently. *Rissley*, 206 Ill. 2d at 457. To establish prejudice, the second prong under *Strickland*, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.*

¶ 24    Ordinarily, the decision to grant or deny a motion to withdraw a guilty plea rests in the discretion of the trial court and will not be reversed absent an abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). Defendant argues that our review in this case is different, however, in that it occurs within the context of a directed finding. Although our research has revealed no case directly on point, we agree with defendant that the issue is whether he presented a *prima facie* case of defense attorney Merel's ineffectiveness so as to shift the burden to the State. See *People v. Nitz*, 371 Ill. App. 3d 747, 750 (2007) (where the trial court granted the State's motion for a directed finding on defendant's motion to quash an arrest and suppress evidence, the reviewing court stated that it must determine whether the defendant made a *prima facie* case so as to shift the burden of going forward to the State). Citing to the standard of review for ineffective-assistance-of-counsel claims, defendant argues that our review is *de novo*. See *People v. Bailey*, 375 Ill. App. 3d 1055, 1059 (2007) (the question of whether defense counsel provided ineffective assistance requires a bifurcated standard of review, wherein a reviewing court must defer to the trial court's findings of fact unless they are against the manifest weight of the evidence but must make a *de novo* assessment of the ultimate legal issue of whether counsel's omission supports an ineffective-assistance claim). However, regardless of what standard we apply, we determine that defendant did not make a *prima facie* case of ineffectiveness under *Strickland*.

¶ 25                              B. Deficiency Prong
¶ 26    With respect to the first *Strickland* prong, defendant makes three arguments. First, he argues that defense attorney Merel was deficient for failing to advise him of the lifetime registration requirement as a consequence of his plea. Second, he goes a step further by arguing that defense attorney Merel made affirmative misrepresentations as to that consequence of his plea. Third, he argues that, regardless of the outcome of the first two arguments, defense attorney Merel was deficient under the analysis in *Padilla*. We consider

-7-

each argument in turn.

¶ 27    "Generally, for a plea to be deemed voluntary and intelligent, a defendant must be fully aware of the direct consequences of entering the plea." *Hughes*, 2011 IL App (2d) 090992, ¶ 14. Direct consequences of a plea are those consequences affecting the defendant's sentence and other punishment that the trial court may impose. *Delvillar*, 235 Ill. 2d at 520. On the other hand, a defendant's knowledge–or lack thereof–of the collateral consequences of a plea has no bearing on the validity of the plea. *Hughes*, 2011 IL App (2d) 090992, ¶ 14. Collateral consequences are effects upon the defendant that the trial court has no authority to impose; they result from an action that might or might not be taken by an agency that the trial court does not control. *Delvillar*, 235 Ill. 2d at 520.

¶ 28    In measuring the reasonableness of an attorney's performance under the *Strickland* test, courts have emphasized the distinction between advising a defendant of the direct consequences of a guilty plea and advising him of consequences that arise collaterally from the plea. *People v. Huante*, 143 Ill. 2d 61, 70 (1991). It has been held that lifetime registration as a sex offender, the consequence at issue here, is not a constraint on liberty and is merely a collateral consequence of the defendant's conviction. *People v. Downin*, 394 Ill. App. 3d 141, 146 (2009). Thus, prior to *Padilla*, the failure of counsel to advise defendant of this collateral consequence would not have provided a basis to invalidate his plea.

¶ 29    Even so, case law prior to *Padilla* draws a distinction between an attorney's failure to advise and affirmative, misleading advice regarding the collateral consequences of a plea. For this reason, defendant also argues that defense attorney Merel *affirmatively misled* him regarding the lifetime sex offender registration requirement. The State agrees that this distinction is critical based on *People v. Correa*, 108 Ill. 2d 541 (1985), in which the attorney's erroneous and misleading advice to the defendant on the collateral consequence of deportation invalidated the defendant's guilty plea. *Correa*, 108 Ill. 2d at 553; see also *People v. Young*, 355 Ill. App. 3d 317, 323 (2005) (noting the distinction between the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea and unequivocal, erroneous, misleading representations that counsel makes in response to a defendant's specific inquiries). According to the State, if this court finds that defendant was affirmatively misled by defense attorney Merel, then defendant has made a *prima facie* case of deficiency, and this court need not consider the impact of *Padilla* on the facts of this case.

¶ 30    In reviewing the record, there is no support for defendant's assertion that defense attorney Merel made "affirmative misrepresentations" regarding the lifetime sex offender registration requirement. In defendant's motion to withdraw his plea, he alleged that defense attorney Merel was ineffective for *not* warning him of the lifetime registration requirement. Likewise, at the hearing on the motion to withdraw the plea, defendant testified that, when he pled guilty, defense attorney Merel never mentioned the lifetime registration requirement; thus, he was not aware of it. Defendant went as far as stating that a sex offender registration requirement was never mentioned by defense attorney Merel except in the context of the rejected plea offer by the State and in the context of the plea negotiation involving unlawful restraint. Accordingly, while defendant admitted that he was aware that there was such a thing as sex offender registration, he clarified that he was never advised of a lifetime

registration requirement as a consequence of his plea. Defendant does not explain how his awareness of sex offender registration from plea negotiations somehow translates into affirmative misrepresentations by defense attorney Merel. Nor does he explain how defense attorney Merel's correct advice that sentencing was up to the court constitutes an affirmative misrepresentation as to the lifetime registration requirement. As the court found, the most that can be said is that defendant was unaware of the degree of the registration requirement.

¶ 31    Having determined that defendant was not affirmatively misled by defense attorney Merel, we turn to defendant's third argument, which is that *Padilla* applies to this case. As previously mentioned, the Supreme Court recently held in *Padilla* that counsel must inform his or her client whether a plea carries a risk of deportation. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1486. Noting that deportation was often considered by lower courts to be a collateral consequence, the Court declined to apply a distinction between direct and collateral consequences in light of the unique nature of deportation. *Id.* at ___, 130 S. Ct. at 1481. Equally important, the Court refused to find that *Strickland* applied only to affirmative misadvice about whether the defendant's conviction would result in deportation. *Id.* at ___, 130 S. Ct. at 1483-84. According to the Court, there was no relevant difference between an act of commission and an act of omission in this context. *Id.* at ___, 130 S. Ct. at 1484. Therefore, regardless of whether sex offender registration is a collateral consequence of pleading guilty, and regardless of whether defense attorney Merel affirmatively misled defendant or merely failed to inform him of this consequence, defendant argues that he has shown a *prima facie* case of deficiency under *Padilla*.

¶ 32    In addition, to counter the State's argument that *Padilla* applies only to deportation and should not be extended to sex offender registration, defendant cites two out-of-state cases applying *Padilla* to sex offender registration. See *People v. Fonville*, 804 N.W.2d 878, 894-95 (Mich. Ct. App. 2011) (holding that under *Padilla* defense counsel must advise a defendant that registration as a sex offender is a consequence of the defendant's guilty plea); *Taylor v. State*, 698 S.E.2d 384, 385 (Ga. Ct. App. 2010) (holding that it is constitutionally deficient for counsel not to advise his client that pleading guilty will subject him to sex offender registration requirements). The State responds by pointing to a case with the opposite result. See *Maxwell v. Larkins*, No. 4:08 CV 1896 DDN, 2010 WL 2680333, at *10 (E.D. Mo. July 1, 2010) (given the difference between the deportation context and the sex offender context, the *Padilla* decision did not indicate that the performance of the attorney was constitutionally deficient).

¶ 33    It is unclear whether *Padilla* applies to collateral consequences other than deportation. For example, in *Hughes*, this court recently considered the issue of whether the failure to advise the defendant of a collateral consequence, that the State could file a sexually-violent-person petition, rendered his plea involuntary. *Hughes*, 2011 IL App (2d) 090992, ¶ 13. Although the defendant in *Hughes* relied on *Padilla* for the proposition that the filing of a sexually-violent-person petition would have consequences for him as great as deportation, this court rejected that argument, stating that "[w]e simply cannot read *Padilla* as upsetting the traditional collateral-direct consequence distinction outside the context of deportation, and we decline to extend *Padilla* in such a manner." *Id.* ¶¶ 19, 22.

¶ 34    We recognize that being declared a sexually violent person is *not* a definite, immediate,

or automatic consequence of a guilty plea, whereas registration as a sex offender is mandatory in this case.[1] However, we need not decide whether defense attorney Merel's alleged failure to advise defendant of the lifetime registration requirement constitutes a *prima facie* case of deficient representation under *Padilla*, because defendant has failed to present a *prima facie* case of prejudice under *Strickland*. See *Strickland*, 466 U.S. at 697; *People v. Albanese*, 104 Ill. 2d 504, 527 (1984) (if it is easier to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, it is not necessary to determine whether defense counsel's performance was deficient). The Court in *Padilla* considered only the first prong of *Strickland*; it did not resolve the issue of prejudice or relieve the defendant of the burden of showing it. According to the Court, "[w]hether [the defendant] is entitled to relief on his claim will depend on whether he can satisfy *Strickland*'s second prong, prejudice, a matter we leave to the Kentucky courts to consider in the first instance." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1483-84.

¶ 35                                  C. Prejudice Prong

¶ 36    In order to establish prejudice, defendant had to show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Rissley*, 206 Ill. 2d at 458. In articulating what is required, our supreme court has stated that "[a] bare allegation that the defendant would have pleaded not guilty and insisted on a trial if counsel had not been deficient is not enough to establish prejudice." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Instead, the defendant's claim must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial. *Id.* at 336. The United States Supreme Court in *Hill v. Lockhart*, 474 U.S. 52 (1985), explained:

"In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* at 59.

Citing *Hill*, our supreme court has stated that the question of whether counsel's deficient representation caused the defendant to plead guilty depends in large part on predicting whether the defendant likely would have been successful at trial. *Hall*, 217 Ill. 2d at 336.

---

[1]By pleading guilty to aggravated criminal sexual abuse, defendant is considered a "sexual predator" under the Act (730 ILCS 150/2(E) (West 2006)), meaning he must register for life (730 ILCS 150/7 (West 2006)).

¶ 37 In this case, defendant did not make a claim of innocence or articulate a plausible defense; he simply rested on the bare allegation that he would have pled not guilty had he known of the lifetime sex offender registration requirement. In his motion to withdraw his plea, the attached affidavits, and his testimony at the hearing, defendant focused only on his lack of awareness of the registration requirement. Defendant excuses this omission by relying on *Correa* and *People v. Edmonson*, 408 Ill. App. 3d 880 (2011). Defendant argues that, under the rationale of those cases, he was not required to make a claim of innocence or articulate a plausible defense. We agree that the defendants in *Correa* and *Edmonson* were not required to make a claim of actual innocence or raise a plausible defense in order to establish prejudice under *Strickland*. As we explain, however, those cases are distinguishable from the case at bar.

¶ 38 In *Correa*, the defendant claimed that his pleas were involuntary based on his attorney's mistaken advice that, because his wife was an American citizen, he had nothing to worry about in terms of deportation, even though his convictions were actually grounds for deportation. *Correa*, 108 Ill. 2d at 544, 547-48. The supreme court, which applied *Strickland* but never used the word "prejudice," stated that the effect of the defendant's pleas on his status as an immigrant was a prime factor in his decision whether to plead guilty. *Id.* at 553. Noting that the advice that counsel gave the defendant was erroneous and misleading, the court held that the defendant's pleas of guilty were not intelligently and knowingly made and therefore not voluntary. *Id.*

¶ 39 *Correa* offers little guidance in this case for two reasons. First, it did not discuss what is necessary to show prejudice under *Strickland*. The reason for this, presumably, is that it predated the United States Supreme Court's decision in *Hill*, which held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58; see also *People v. Black*, 207 Ill. App. 3d 304, 309-10 (1991) (recognizing that, after *Correa*, *Hill* clarified that the prejudice prong must also be satisfied in order to establish ineffective assistance of counsel in the context of guilty pleas). Second, a key consideration for the *Correa* court was the effect of erroneous, misleading advice about deportation on the defendant's decision to plead guilty, as opposed to the passive conduct of counsel in failing to discuss that consequence of a guilty plea. *Correa*, 108 Ill. 2d at 551, 553. However, this distinction is no longer important under *Padilla*, which found no relevant difference between an act of commission and an act of omission on the part of counsel in the context of deportation.

¶ 40 In *Edmonson*, the defendant moved to withdraw his plea based on his counsel incorrectly advising him that he could still challenge his sentence by filing a motion to reconsider his sentence and by appealing if that motion were denied. *Edmonson*, 408 Ill. App. 3d at 883. The State conceded that defense counsel incorrectly advised the defendant but it contended that the defendant was not entitled to withdraw his plea, because he did not provide evidence of actual innocence and because he was not prejudiced by the misinformation, as his sentence was not excessive. *Id.* at 884. This court found *Correa* controlling due to the fact that the defendant had been affirmatively misinformed about his ability to challenge his sentence. *Id.* at 886. Because the evidence showed that the defendant had relied on the misinformation when he entered his plea and that it played a key role in his decision, counsel was ineffective

and the defendant's plea was not voluntary. *Id.* We further stated that the only prejudice the defendant needed to show was that, absent his counsel's misinformation, he would not have pled guilty. *Id.*

¶ 41     At first glance, *Edmonson* seems to support defendant's argument that the only prejudice he need show is that he would not have pled guilty had he known of the lifetime registration requirement. However, what separates *Edmonson* from the case at bar is that the defendant in *Edmonson* demonstrated how he was prejudiced by his attorney's erroneous advice: he lost the right to challenge his sentence after pleading guilty–a right he intended to exercise and believed he could exercise despite pleading guilty. The prejudice became evident when the defendant did in fact attack his sentence by arguing that the trial court had ignored various mitigating factors, only to find out that his guilty plea foreclosed him from doing so. Therefore, the defendant did more than make the bare assertion that, but for his attorney's deficiency, he would not have pled guilty; he showed prejudice in the lost opportunity to challenge his sentence.

¶ 42     The critical inquiry in this case is what is necessary to show a *prima facie* case of prejudice. Even if we excused defendant's failure to claim innocence or raise a plausible defense as *Hall* seems to require, defendant does not explain how his alleged ignorance of the lifetime registration requirement factored into his decision to plead guilty. Or, stated differently, he does not explain why, had he known of that consequence, he would have pled not guilty and insisted on going to trial. While *Padilla* did not resolve the prejudice prong, it stated what was required for a defendant to show prejudice: "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1485. It is hard to imagine how rejection of the plea offer in this case would have been rational, since defendant confessed to the crime and would have subjected himself to an additional charge by going to trial. Going to trial would not have spared defendant of the effect of lifetime registration if he were convicted, which was likely, and would also have subjected him to the possible penalty of imprisonment instead of probation. Essentially, the prejudice that defendant alleges is dissatisfaction about the effects of registration, which would not have changed if he had gone to trial and been convicted.

¶ 43     Even assuming that defendant can satisfy *Strickland*'s deficiency prong, which means that *Padilla* applies and that defense counsel was deficient for failing to advise defendant of the consequence of lifetime sex offender registration, this does not result in automatic prejudice under *Padilla*. See *Padilla*, 559 U.S. at ___ n.12, 130 S. Ct. at 1485 n.12 (the Court's rejection of the defendant's prejudice claim in *Hill* "further underscores the fact that it is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong"). Like defendant in this case, the defendant in *Padilla* argued that, had he known of the deportation consequence, he would not have pled guilty but would have insisted on going to trial. After finding defense counsel deficient for failing to advise of the deportation consequence, *Padilla* did not determine that the defendant's insistence that he would have gone to trial was sufficient to establish prejudice. Instead, it recognized that "prejudice" was a separate hurdle for the defendant, and it remanded the case for the lower court to consider that issue in the first instance. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1483-

-12-

84.

¶ 44    Here, to establish prejudice, defendant offers nothing more than the bare assertion that he would not have pled guilty but would have insisted on going to trial. This is not sufficient, given *Padilla*'s admonition that prejudice requires a defendant to convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1485. Admittedly, the standard of proving prejudice continues to evolve, and there may be cases where a defendant's ignorance of the registration requirement (or its duration) could result in prejudice. This is not such a case.

¶ 45    Finally, although defendant did not make this argument before the trial court, we note that, on appeal, defendant makes the alternative argument that "the record reflects *prima facie* evidence of a plausible defense to the charge." Defendant points out that the record shows that S.D. lied about her age to defendant and that he believed that she was not a minor. The State points out that this argument is forfeited. See *People v. Hall*, 2011 IL App (2d) 100262, ¶ 19 (a party cannot make an argument for the first time on appeal). In any event, the record shows that defendant believed that S.D. was 16 years old at the time of the incident, which is not a defense. Therefore, for all of these reasons, defendant failed to present a *prima facie* case of prejudice, and it was proper for the trial court to deny his motion to withdraw his guilty plea.

¶ 46                                III. CONCLUSION

¶ 47    For the aforementioned reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 48    Affirmed.