2021 IL App (2d) 200085-U
No. 2-20-0085
Order filed December 14, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1507 |
| FRANKIE BOONE, | ) ) | Honorable John S. Lowry |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

**ORDER**

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Brennan concurred in the judgment.

¶ 1   *Held*:   The trial court properly denied defendant's request to withdraw his guilty plea where defendant failed to establish ineffective assistance of counsel or prejudice resulting from the trial court's Rule 402 admonishments, defendant failed to show possible neglect during preliminary *Krankel* hearing, and the trial court erred in imposing an extended term sentence resulting from defendant's unlawful restraint conviction. Affirmed in part and vacated in part.

¶ 2   Defendant, Frankie Boone, entered a partially negotiated plea (with no agreement as to sentencing) to predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2014)) and unlawful restraint (720 ILCS 5/10-3(a) (West 2014)). The trial court of Winnebago County sentenced defendant to a 16-year term of imprisonment for the assualt and a consecutive  and

extended 4-year term of imprisonment for the unlawful restraint, for an aggregate 20-year term of imprisonment. Defendant appeals, arguing that the trial court erred in: 1) failing to allow defendant to withdraw his guilty plea; 2) failing to appoint counsel to develop defendant's claims of ineffective assistance; and 3) imposing a four-year extended term sentence for defendant's unlawful restraint conviction. We affirm in part and vacate in part.

¶ 3                                 I. BACKGROUND

¶ 4      We summarize the relevant facts from the record on appeal. On April 27, 2015,[1] Rockford police officers were dispatched to Rockford Memorial Hospital regarding a sexual abuse complaint involving "a young girl who was both blind and autistic." M.G.'s mother informed officers that on April 25, 2015, she had dropped M.G. off with her cousin, who regularly babysat M.G. On the night of April 26, 2015, while M.G. was sleeping on an upstairs couch with her cousin, defendant carried her down to the home's basement. There, defendant removed M.G.'s underwear, began "rubbing her vaginal area," and inserted his finger into her vagina.

¶ 5      The next morning, M.G.—who, as a result of her disabilities, was unable to climb back upstairs without assistance—was discovered in the basement "with no pants on *** and no pajamas on." She was taken to the Carrie Lynn Children's Center, where a forensic interview was conducted. During the interview, M.G. told the interviewer that defendant "was the person who picked her up, took her downstairs, took her underwear off, [and] rubbed her vagina with his hand[,] inserting his finger into her vagina."

¶ 6      On August 9, 2015, a grand jury indicted the defendant with one count of predatory

---

[1] According to the State, the bill of indictment incorrectly listed this date as being May 26, 2015.

criminal sex assault (720 ILCS 5/11-1.40(a)(1) (West 2014)), two counts of aggravated criminal sexual assault of a physically handicapped person (720 ILCS 5/11-1.30(a)(6) (West 2014)), one count of aggravated criminal sex abuse of a physically handicapped person (720 ILCS 5/11-1.60(a)(4) (West 2014)), and one count of unlawful restraint (720 ILCS 5/10-3(a) (West 2014)).

¶ 7    On September 7, 2018, defendant's attorney, Steven Lee (defense counsel) indicated that he had "had some discussions" with the State, and that "there may be the possibility for some kind of plea negotiations that would involve a 402 conference." However, at that time, defense counsel indicated that he had not yet discussed such a conference with defendant. The court asked the parties whether they had previously conducted a 402 conference, and the State indicated that while there had previously been a plea conference in one of defendant's earlier cases before the court, he had not been "freshly admonished." The trial court consequently said that it would admonish defendant during the next court date, on September 21, 2018.

¶ 8    On September 21, 2018, the parties appeared for a status hearing. On that date, the State reminded the court that they had previously "talked about a possible 402 [conference]," but because defense counsel was still reviewing discovery, the matter was continued to October 19, 2018. On that date, defense counsel indicated that defendant asked to have a final plea discussion with the State and that "there [was] a possibility [that they] may ask for a 402 conference also."

¶ 9    On November 2, 2018, defense counsel stated that, after having more discussions with the State and defendant, he wished to set a date for "another 402 conference." On December 4, 2018, the record indicated that a 402 conference was held. No specific details concerning the discussions appear within the record. On January 2, 2019, defense counsel informed the court that the State "reached out to the alleged victim and the victim's family" regarding a prospective plea offer. However, defense counsel wished to have more time to discuss the offer with defendant. On

January 17, 2019, the State advised the court that it had reached out to the victim's mother concerning a prospective offer, but that the mother was "not happy with the proposed disposition." The trial court noted that the parties had "reached an impasse," and defense counsel agreed. The record from the January 17, 2019, proceedings did not indicate what specific offer may have been made or subsequently rejected by the victim's family. The parties set a date for trial.

¶ 10 On June 13, 2019, at a pretrial hearing, the court admonished defendant about some of the pending charges:

"THE COURT: The most serious charge is predatory criminal sexual assault[,] *** Class X. Is that six to thirty?

[THE STATE]: Yes. Six to sixty.

THE COURT: [(To defendant)] Six to sixty. And do you understand if convicted, that's the sentencing range on the most serious offense. Do you understand that?

[DEFENDANT]: Yes.

THE COURT: So[,] that type of charge, predatory criminal sexual assault, is non-probationable. Understand that?

[DEFENDANT]: Yes."

Defense counsel indicated that he had discussed these sentencing ranges with defendant.

¶ 11 On June 14, 2019, the parties appeared before the court at defendant's request, as he now wished to plead guilty to the predatory criminal sexual assault and unlawful restraint charges. As specified by defense counsel, the remaining counts would be dismissed on motion of the State. However, the parties reached no agreement concerning defendant's resulting sentence. The court once again discussed defendant's pending charges, as well as their applicable sentencing ranges:

"THE COURT: I want to make sure that you understand before we get started that you are

pleading guilty to both a Class X felony, mandatory [department of corrections], non[-]probationable, and the Class x felony sentence is served at 85 percent; do you understand that?

[DEFENDANT]: Yes.

THE COURT: And that unlawful restraint, that is a Class 4 felony. The range of penalties is one to six years followed by mandatory supervised release [(MSR)], but that is at 50 percent day for day eligibility; do you understand that?"

[DEFENDANT]: Yes."

The court asked defendant whether he understood that the court would decide his sentence, and defendant replied in the affirmative. Defense counsel affirmed that "[defendant understood] that the [c]ourt [was] not bound by any representations" made at the prior 402 conference, and that the [c]ourt [would] sentence him after the evidence is heard based on what the [c]ourt's judgment is." The court responded, "Well, from that 402[,] I guess the way I put it is all bets are off the table, and the [c]ourt has a clean slate of opportunities, options[,] or ranges." Defense counsel indicated that defendant understood as much.

¶ 12    Defendant then agreed that he had "ample time and opportunity to discuss [his] plea with [defense counsel]," that he was "satisfied with [defense counsel's] representation, and that he understood the charges levied against him. Defense counsel confirmed that he had explained the charges to defendant, and that he believed defendant understood them. Again, the court admonished defendant concerning the applicable sentencing ranges for each of the charges as well as "the [other] consequences of pleading guilty." Concerning the predatory criminal sexual assault charge, the following exchange occurred:

"THE COURT: Now, I covered this before, but [defendant], I'm going to explain again that [c]ount 1 here, predatory criminal sexual assault, is a Class X felony range of

penalties, non[-]probationable, 6 to 60 years Department of Corrections followed by three years [MSR]. Any sentence under that Class X range is served at 85 percent, fines up to [$]25,000. I believe these are also mandatory reporting.

 [DEFENSE COUNSEL]: Yes, your Honor. I have discussed that with [defendant], and he understands that he will be required to report.

 THE COURT: That is three years to natural life?

 [DEFENSE COUNSEL]: Yes, your Honor. That will be lifetime registration.

 THE COURT: [State], do you agree with that?

 [THE STATE]: Yes. Well, let's not—three years to natural life is [MSR], and then I believe it's lifetime registration.

The court corrected itself, telling defendant, "MSR is three years to natural life." Defendant again indicated that he understood the court's advisements. At the conclusion of the hearing, the court found that defendant plead guilty "knowingly, intelligently[,] and voluntarily" accepted the plea, and entered judgments of conviction on the predatory criminal sexual assault and unlawful restraint charges. The remaining charges were dismissed.

¶ 13 On July 29, 2019, the parties appeared for defendant's sentencing hearing. Defendant again agreed that he had sufficient time and opportunity to meet with counsel, that he was satisfied with defense counsel's representation, and they had discussed the possible sentencing ranges that he currently faced. After once more going over defendant's convictions and their sentencing ranges, defense counsel again confirmed that "[defendant] understands that the [c]ourt is not limited to any representations made at th[e prior] 402 conference." For the first time, the parties then discussed their recollections of the 402 conference on the record, including the court's suggested sentence for a prospective plea to a Class 2 felony:

"THE COURT: I don't think we discussed open plea. That's my recollection.

[DEFENSE COUNSEL]: I'm not sure what—I don't think we specifically discussed open plea. I think the [c]ourt gave us some guidance as to what the [c]ourt felt an appropriate sentencing range would be.

THE COURT: Well, we have to put that on the record then.

***

[DEFENSE COUNSEL]: My recollection was the [c]ourt said seven to 12 years would be an appropriate sentencing range.

[THE STATE]: My last note, there had been a discussion about a reduction and there had been a possible agreement, but then that had been rejected, Judge.

THE COURT: Well, was that range based on a reduction?

[THE STATE]: It was based on a reduction to a Class 2. And the [c]ourt had said seven to 12 on a Class 2. And the range was three to 14 based on extended term on a Class 2, but that was rejected. And this plea happened on the eve of jury trial.

***

[DEFENSE COUNSEL]: Judge, I just want to be clear about this. That was at a time when we were engaged in plea negotiations[,] and we did not reach an agreement. The State had made a concrete offer at one point that [defendant] rejected. My recollection is not that the [c]ourt said on a Class 2 this would be the sentencing range. My recollection is the [c]ourt's input on this was seven to 12 was an appropriate range and my negotiating at the time was trying to get a Class 2 for [defendant]. And I think at one time the State had made an offer based on a Class 2 that was rejected.

***

THE COURT: But that was in the tone of plea negotiations and it was rejected. The reduction to the Class 2 was rejected.

[DEFENSE COUNSEL]: Well, I guess that depends on how you look at it. My recollection is that the State actually made an offer on a Class 2 at one point that was rejected by [defendant.] And [the State] can correct me if I'm wrong.

[THE STATE]: My notes [for the 402 conference indicate that] the defendant would plead guilty open to a registrable offense. I'd offer Class 2 open, three to 14 [years].[2] The [c]ourt says Department of Corrections seven to 12 on Class 2. Then negotiations continued."

The trial court and defense counsel agreed with the State's recollection of the conference. Defense counsel further acknowledged that the proposed sentencing range "was based on the State's indication that they would be willing to come down to a Class 2," confirming that the parties "were discussing a Class 2 at the time."

¶ 14    Moving on, the court once again reiterated that in sentencing defendant, it was not bound

---

[2] There seems to be some confusion in the record concerning whether the State offered defendant an open plea of three to 14 years—as the State indicates here—or whether the State offered a 10-year sentence on a Class 2 felony in exchange for a guilty plea—as the parties suggest in their briefs. Our reading of the record indicates that the parties may have conflated the State's 10-year offer with the trial court's admonitions concerning the applicable range for an extended term Class 2 felony. Regardless, any distinction between either hypothetical offer does not affect our analysis. Accordingly, we adopt the parties' stance that the State offered defendant a 10-year sentence for a guilty plea to a Class 2 felony, as communicated in their briefs.

by the parameters of the prior 402 conference. The court then sentenced defendant to 16 years' incarceration for the predatory criminal sexual assault charge, followed by a period of MSR between 3 years and natural life. For the unlawful restraint charge, the court sentenced defendant to an extended term of four years' incarceration.

¶ 15    On August 22, 2019, defendant filed his *pro se* motion arguing that his trial counsel was ineffective for failing to properly communicate the State's various plea offers to defendant. On October 16, 2019, the court held a preliminary *Krankel* hearing on the motion. During the hearing, defendant represented his understanding that the State had previously made him an offer for a 14-year plea deal to a Class 2 felony, which had never been communicated to him. According to defendant, he "would have never turned down a Class 2." Defense counsel disagreed that such an offer had ever been made by the State. The court asked defense counsel, "How did the year fourteen come up then?" Defense counsel replied, "I think it's likely when the range of three-to-fourteen was discussed at the sentencing hearing, I think [defendant] might have misunderstood that as someone having said there had been a fourteen-year offer."

¶ 16    The court asked defendant whether defense counsel ever advised him that "the State was offering an open plea on a Class 2." Defendant replied, "No. *** [N]ot [in] my understanding." Defense counsel attempted to clarify the matter:

> "I don't think I discussed with [defendant] an open plea on a Class 2, your Honor, because I don't think that's what had been offered. After the 402 conference[,] I had gone to [defendant] indicating, as a result of the 402 and the [c]ourt recommending a range of seven-to-twelve[,] that the State had put [10] years on the table and that would be on a Class 2. I indicated to him [that] I was aware that was well outside of what he had asked me to try to get for him, which initially was three, four, five, something like that."

Defense counsel further indicated that, after the State had rejected defendant's counteroffer of eight years, "that was the end of the discussions" until defendant made his open plea.

¶ 17    Defendant later stated that he was "not aware" of the State's 10-year offer, but did recall that the State offered to "give [him]" eight years with time served "on a registry," leading to the following exchange:

> "THE COURT: On a registry?
>
> [DEFENDANT]: Yeah.
>
> THE COURT: But a plea to Class 2?
>
> [DEFENDANT]: Yes.
>
> THE COURT: So you recall your attorney advising—
>
> [DEFENDANT]: He didn't really say Class 2. He just told me that he could get me
>
> time served on a registry and I took it as a Class 2."

Defense counsel agreed that "[they] understood [the State's offer] was on a Class 2." Defense counsel further acknowledged telling defendant that the State offered him a 10-year sentence, but defendant rejected that offer before advising defense counsel to make a counteroffer for seven or eight years.

¶ 18    The court asked defense counsel, "Now, the [State's] offer of [10 years], does that contemplate a plea to a Class 2 or a Class X?" Defense counsel replied, "It was Class 2 was my understanding," but again explained that defendant had rejected that offer. The court asked defendant, "[D]o you recall any conversation with [defense counsel] wherein he indicated that he could get you an offer to a Class 2 felony?" Defendant responded, "No."

¶ 19    Defendant further suggested that defense counsel neglected to tell him that the State's offer would be "take[n] *** of the table" if he didn't accept the 10-year offer and said that if he had

known "that there w[ere] no more pleas after that," he would have taken the State's offer. Defense counsel responded that he did not think "any timeframe or limit was put on [the State's offer]." The court then asked defendant, "[D]id you feel that the offer [the] State was making after the 402 conference was open throughout until the time of trial?" Eventually, defendant responded, "That was my understanding. *** That it was a Class 2, seven-to-twelve."

¶ 20    The court then asked defendant, "[O]nce again, do you recall your attorney *** communicating the State's offer after the 402 conference of [10] years on a Class 2; do you recall that?" Defendant responded, "No." Defense counsel addressed defendant's contentions:

> "Well, I want to be careful here. I know the [10]-year offer was communicated. I can't say that I said specifically to him at that moment[,] 'ten on a Class 2.'
>
> [Defendant] and I had been talking about a Class 2 in terms of our negotiations[,] because the numbers we were looking for originally were in the Class 2 range. So[,] we came out of the 402 with an offer of [10 years] in hand, I communicated that to him. I cannot say that I specifically said that wouldn't be on the Class 2[,] but we certainly had been talking about a Class 2."

The court asked defense counsel whether "the State had mentioned a Class 2" to him, and defense counsel responded, "At the 402, that's correct." However, defense counsel did not recall informing defendant that the State's 10-year offer was time sensitive, as defendant had rejected the State's offer upon hearing it. Defense counsel similarly could not recall whether he had advised defendant that defendant would be subject to a "three-year MSR to natural life or a lifetime registry" as a result of his open guilty plea. The court took the matter under advisement.

¶ 21    On November 15, 2019, the parties appeared to hear the trial court's decision. The court noted that "[t]he crux of [defendant's] *pro se* ineffective assistance claims is that his attorney ***

failed to communicate the State's offers during the course of negotiations." After having reviewed the applicable court transcripts, filings, and various statements from the preliminary *Krankel* hearing, the court found that defendant's claim of ineffective assistance of counsel lacked merit. Specifically, the court noted that defendant was aware of the State's plea offer to a Class 2 felony, but he nonetheless rejected that offer by introducing his own counteroffer of an 8-year sentence. Furthermore, the court explained that, even if defendant was correct that defense counsel failed to inform him that "the MSR for a Class X predatory criminal sexual assault is three years to natural life," defendant was aware of this fact as a result of the court's prior admonitions at the June 14, 2019, plea hearing. Therefore, defendant could not convincingly claim prejudice by "[defense] counsel's alleged defective performance." Consequently, the court found that defendant's "*pro se* motion for ineffective assistance of plea counsel lack[ed] merit," and refused to appoint him new counsel.

¶ 22    On December 6, 2019, defendant, now through defense counsel, filed his amended motion pursuant to Supreme Court Rule 604(d) (eff. July 1, 2017), once again seeking to withdraw his guilty plea. In the amended motion, defendant alleged that he "did not knowingly, intelligently, and voluntarily waive his rights to jury trial, nor did [he] fully understand or comprehend the admonishments of the [c]ourt pursuant to Supreme Court Rule 402 at the time of the entry of [his] plea of guilty." Defendant further alleged that he "did not understand the plea negotiations that occurred during the pendency of the case," nor the admonishments regarding the applicable sentencing ranges or the terms concerning any MSR.

¶ 23    On December 13, 2019, the court held a hearing on defendant's amended motion. During direct examination, defendant testified that, while he "was told" of the MSR range implicated by his plea, he "didn't fully understand it." He further testified that he was unaware that he could be

sentenced to any more than 12 years' incarceration, as his counsel had previously told him that "the judge put seven to twelve [years] on the table" following the parties' 402 conference. Defendant also agreed that, when he was offered ten years by the State at the 402 conference, he "[was] not under the impression that that [offer] was on a Class 2." Instead, he explained that he had thought that the State's offer "was at 85 [percent]." Although it's not altogether clear from defendant's disjointed testimony, he also seemingly believed that "there [were] still offers out there" from the State "before [he] went to trial." Resultingly, defendant asked the court to reduce his sentence or, alternatively, to allow him to withdraw his plea.

¶ 24    On cross-examination, the State asked defendant why he believed that his sentence was limited to being in between seven and 12 years, leading to the following exchange:

"Q [(THE STATE)]. And at [the 402 conference], *** [defense counsel] made you aware that [the court] indicated that [it] was leaning towards a sentence of seven to [12] years if you pled guilty to a Class 2 felony, correct?

A [(DEFENDANT)]. That I can't remember.

Q. Okay. Well, you do talk about seven to [12] years. What are you thinking you're talking about?

A. Well, it wasn't—it wasn't—it wasn't set at a Class 2.

Q. Okay.

A. It was a range at six to [60 years], so that's a Class X, so I'm under the assumption that it's an X."

Defendant agreed that the State had rejected all of defendant's counteroffers leading up to the prospective trial date before he entered his guilty plea. Nonetheless, he said he only pleaded guilty because "[he] was told that there was seven to [12] years on the table." When asked why he did

not mention as much to the court while entering his plea, defendant indicated that he "was kind of scared." The State read portions from defendant's plea hearing in which the court admonished defendant of the possible penalties for each of the underlying offenses, as well as the other consequences stemming from his guilty plea. Defendant agreed that he had heard the court's admonitions and that he had told the court that he understood its admonitions and still wished to plead guilty.

¶ 25    On January 10, 2020, the court denied defendant's amended motion. While defendant had argued that he did not have adequate time to "fully consider the consequences of his plea of guilty before [entering] the plea," the court disagreed, finding that defendant never requested more time to contemplate the plea, despite taking time to confer with his counsel beforehand. The court also found that "[w]ithout more specificity, it [was] difficult to address defendant's arguments that he did not "knowingly, intelligently, and voluntarily waive his rights to a jury trial." Nonetheless, the court suggested that the transcripts from the plea hearing refuted defendant's any such assertions. Defendant timely appeals.

¶ 26                                II. ANALYSIS

¶ 27    Defendant makes three arguments on appeal. First, defendant argues that the trial court erred when it refused to allow defendant to withdraw his guilty plea. Second, defendant argues that the trial court erroneously declined to provide defendant with counsel to develop his ineffective assistance claims following the preliminary *Krankel* hearing. Third, defendant argues that, because his conviction for unlawful restraint "was part of the single course of conduct for this [predatory criminal sexual assault] offense," the trial court erred in imposing its four-year extended term sentence for that conviction. We analyze each of these arguments in turn.

¶ 28                            A. Plea Withdrawal

¶ 29   First, defendant contends that the trial court erred in refusing to allow him to withdraw his guilty plea.  A defendant has no absolute right to withdraw a guilty plea. *People v. Canterbury*, 313 Ill. App. 3d 914, 917 (2000). A defendant seeking to withdraw a plea bears the burden of showing the necessity for the withdrawal. *Id.* "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *People v. Hughes*, 2012 IL 112817, ¶ 32. "Absent substantial objective proof showing that defendant's mistaken impression was reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea." *People v. Wilson*, 295 Ill. App. 3d 228, 236 (1998). "It is within the trial court's discretion whether to permit a guilty plea to be withdrawn, and its decision will not be disturbed absent an abuse of that discretion." *Canterbury*, 313 Ill. App. 3d at 918. "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with the position adopted by the trial court." *People v. Willigman*, 2021 IL App (2d) 200188, ¶ 43.

¶ 30   Here, defendant argues that he should have been allowed to withdraw his plea for two reasons. First, defendant argues that the trial court should have allowed him to withdraw the plea based on defense counsel's ineffectiveness. Next, defendant argues that he should have been allowed to withdraw his plea because of the court's failure to give defendant proper admonitions in compliance with Illinois Supreme Court Rule 402 (eff. July 1, 2012). We disagree with both contentions.

¶ 31                              1. Ineffective Assistance

¶ 32   First, defendant argues that, because he received ineffective assistance regarding the State's various offers and those offers' resulting sentences, the trial court erred in failing to allow him to

withdraw his plea. Specifically, defendant argues that his counsel was ineffective for: 1) failing to advise him that the State's offer pertained to a Class 2 felony; 2) failing to convey that, if defendant had accepted the State's offer, he would be subject to day-for-day credit; and 3) neglecting to inform defendant that the State's offer was subject to a deadline.

¶ 33    " 'One basis for the withdrawal of a guilty plea is where defense counsel gives the defendant inadequate advice prior to entering the plea.' " *People v. Dorado*, 2020 IL App (2d) 190818, ¶ 11 (quoting *People v. Glover*, 2017 IL App (4th) 160586, ¶ 39). Pursuant to the United States and Illinois constitutions, criminal defendants have a right to effective counsel, and that right attaches to the plea-bargaining process. *People v. Hale*, 2013 IL 113140, ¶ 15. "[A] defendant has a constitutional right to be advised by his counsel of an offer by the prosecution to accept a plea of guilty to a reduced charge." *People v. Williams*, 47 Ill. 2d 239, 240 (1970).

¶ 34    "A defendant may enter a guilty plea because of some erroneous advice by counsel, but that fact alone does not destroy the voluntary nature of the plea; it must be shown that defendant was denied the effective assistance of counsel under [*Strickland v. Washington*, 466 U.S. 668, 687 (1984)]." *People v. Cunningham*, 286 Ill. App. 3d 346, 349-50 (1997). Under *Strickland*, a defendant must show: 1) that his or her counsel's performance fell below an objective standard of reasonableness; and 2) that the outcome of the underlying case would have been different but for counsel's deficient performance. *Id.* at 351. A defendant can satisfy the deficient performance prong of *Strickland's* analysis by showing that defense counsel failed to communicate a formal plea offer to the defendant. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). To establish prejudice, a defendant must show that but for counsel's deficient performance, the defendant would have accepted the plea deal and that "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id.* at 148.

¶ 35    First, defendant argues that defense counsel's performance was objectively deficient because counsel failed "to communicate and explain the State's offer" to defendant, as evidenced by defendant's assertion "that he did not understand the plea negotiations." Specifically, defendant contends that defense counsel failed to inform him that the offer involved a guilty plea to a Class 2 felony. According to defendant, "[Defendant] stated that when he was offered 10 years[,] [he] did not know that it was on [a] Class 2 offense."

¶ 36    In arguing prejudice, defendant asserts that he would have accepted the State's 10-year offer had he been properly advised of these facts. In support of this claim, defendant points out that "[p]lea counsel indicated that [defendant] was willing to accept an offer of somewhere between three to five years," and that later, he had also expressed a willingness to agree to an eight-year prison term. Presumably, given defendant's willingness to accept such sentences, he would have been satisfied by the 10-year sentence, which could have been reduced to five years, considering the prospect of day-for-day credit. Based on the court's earlier recommendations of a sentence between seven to 12 years, defendant also surmises that the court would have approved of such a deal. For all of these reasons, defendant requests that we "enforce the original offer and allow [defendant] to accept the 10-year offer on a Class 2 felony." We disagree.

¶ 37    We need not determine whether counsel's performance was deficient as to this point, because it did not result in prejudice, as defendant was nevertheless aware that the offer involved a Class 2 felony. At the preliminary *Krankel* hearing, defendant described his understanding of the State's offer, mentioning that "[defense counsel] just told me that he could get me time served on a registry *and I took it as a* Class *2*." (Emphasis added.) As such, defendant admitted having knowledge that the offer involved a Class 2 felony. Indeed, defendant acknowledges as much in his brief, providing that "[defendant] also added that his understanding was that the State's offer

*was a* Class *2* with 7-12 years." (Emphasis added.) Defense counsel agreed with defendant's recollection, opining that "[they] understood [the State's offer] was on a Class 2." Defense counsel further testified:

> "[Defendant] and I had been talking about a Class 2 in terms of our negotiations[,] because the numbers we were looking for originally were in the Class 2 range. So[,] we came out of the 402 with an offer of [10 years] in hand, I communicated that to him. I cannot say that I specifically said that wouldn't be on the Class 2[,] *but we certainly had been talking about a* Class *2.*" (Emphasis added.)

All of these portions of the record evince defendant's knowledge that the State's offer pertained to a Class 2 offense. Because defendant therefore was aware of this fact, he cannot claim prejudice stemming from defense counsel's alleged failure to explicitly relay as much to defendant. For these reasons, defendant has failed to establish prejudice under *Strickland*. *Cunningham*, 286 Ill. App. 3d at 351.

¶ 38    Defendant further argues that defense counsel's performance was deficient because "[counsel] did not explain the significance of truth-in-sentencing until [defendant] was in the middle of the plea proceedings," so defendant was unaware that he would be "eligible for day-for-day credit." Again, defendant suggests that he would have taken the State's offer had he been properly advised of this fact. However, even if defense counsel neglected to inform defendant that any sentence resulting from the Class 2 plea deal was subject to day-for-day credit, such a failure did not constitute deficient performance. "Generally, for a plea to be deemed voluntary and intelligent, a defendant must be fully aware of the direct consequences of entering the plea." *People v. Hughes*, 2011 IL App (2d) 090992, ¶ 14. "Direct consequences of a plea are those consequences affecting the defendant's sentence and other punishment that the trial court may impose." *People*

*v. Presley*, 2012 IL App (2d) 100617, ¶ 27. On the other hand, *collateral consequences* involve any effects resulting from a plea that are taken by an agency that the trial court does not control. *Id.* "[A] defendant's knowledge—or lack thereof—of the collateral consequences of a plea has no bearing on the validity of the plea." *Id.*

¶ 39    This court has found that eligibility for good-conduct credit is determined by the department of corrections and not trial courts, meaning the prospect of such credit is a collateral consequence of a guilty plea. *People v. Frison*, 365 Ill. App. 3d 932, 935 (2006). Accordingly, we have found that counsel cannot be deemed ineffective for failing to inform a client of any prospective eligibility for good-conduct credit. See *Id.*; *People v. La Pointe*, 2015 IL App (2d) 130451, ¶ 84. Pursuant to this reasoning, defense counsel's failure to specifically mention the prospect of day-for-day credit—as it related to the State's offer—did not constitute deficient performance under *Strickland. Id.*

¶ 40    Third, while defendant argues that defense counsel was ineffective for "fail[ing] to tell defendant that the State's offer *** would be withdrawn if it was not accepted within a certain time frame," defendant cannot establish prejudice resulting from such an alleged failure. Plea agreements are subject to traditional principles of contract law. *People v. Henderson*, 211 Ill. 2d 90, 103, (2004). Pursuant to those principles, the legal effect of a counteroffer is the rejection of a standing plea offer and such a rejected offer "cannot be revived through a later acceptance." *Id.* Instead, "[w]hen a defendant rejects a State offer, the parties go 'back to the drawing board.' " *Id.*

¶ 41    During defendant's July 29, 2019, sentencing hearing, the State reviewed its notes of the parties' previous negotiations, recounting that "there had been a discussion about a reduction and there had been a possible agreement, *but then that had been rejected*." (Emphasis added.) Defense counsel agreed with the State's recollection, noting that "The State had made a concrete offer at

one point that [defendant] rejected." Similarly, the court recalled that, during the parties' prior negotiations, "The reduction to the Class 2 was rejected." Additionally, during the October 16, 2019, preliminary *Krankel* hearing, defendant acknowledged that, upon receiving the State's offer, he had made his own counteroffer.

¶ 42    Defendant's counteroffer operated as a rejection of the State's standing offer. *Henderson*, 211 Ill. 2d at 103.  As a result of this rejection, the State's offer was terminated and could not later be revived. Therefore, because defendant immediately terminated the State's offer, and because that offer could not thereafter be revived through a later acceptance, defendant cannot claim prejudice from defense counsel's failure to advise him that the State's offer was time sensitive. *Id.* For all of these reasons, the trial court correctly concluded that defendant's claims of ineffective assistance of counsel lacked merit.

¶ 43                                2. Rule 402 Admonitions

¶ 44    Next, defendant argues that he should be allowed to withdraw his plea because "[t]he trial court's failure to comply with Supreme Court Rule 402 caused [defendant] to reject the [State's] *** favorable offer and rendered the plea negotiation process unfair." Again, we disagree with defendant's contentions.

¶ 45    Illinois Supreme Court Rule 402 (eff. July 1, 2012) pertains to the procedures involving plea discussions and agreements. "Pursuant to Illinois Supreme Court Rule 402, every defendant who enters a plea of guilty has a due process right to be properly and fully admonished." *People v. Whitfield*, 217 Ill. 2d 177, 188 (2005). To ensure a defendant is not deprived of this due process right, a trial court must substantially comply with Rule 402's directives. *Id.* at 195. "Moreover, whether reversal is required for an imperfect admonishment depends on whether real justice has been denied or whether the defendant has been prejudiced by the inadequate admonishment."

*People v. Fuller*, 205 Ill. 2d 308, 323 (2002). A reviewing court may consider the entire record in considering whether a defendant understood the nature of the charges to which he or she was pleading. *People v. Walker*, 109 Ill. 2d 484, 499 (1985).

¶ 46    Here, defendant argues that, even though a Rule 402 conference had been held, the court did not admonish him pursuant to Rule 402(d)(1), which required the court to inform him "[t]hat[,] at the end of [a 402] conference, the judge may make a recommendation as to what an appropriate sentence would be[,]*** and [t]hat the defendant or the prosecutor is free to accept or reject the judge's recommendation." Ill. S. Ct. R. 402(d)(1) (eff. July 1, 2012). Defendant stresses the significance of the court's perceived failures, arguing that "[these] admonishment[s] [were] critical to [defendant's] understanding of the plea process, especially where his counsel was clearly deficient in explaining the process to [defendant]." Defendant further argues that "the admonishment that either [party] could accept or reject [the court's sentencing] recommendation was critical to ensuring the voluntariness of [defendant's] plea, suggesting that the trial court's perceived failures caused defendant to reject the State's favorable offer.

¶ 47    We disagree. As a preliminary matter, defendant acknowledges that he did not raise this issue before the trial court, which would normally mean the argument has been forfeited. *People v. Estrada*, 394 Ill. App. 3d 611, 626 (2009). Regardless, citing *People v. Company*, 376 Ill. App. 3d 846, 848 (2007), defendant asserts that the issue may be reviewed pursuant to the plain error doctrine. However, we need not consider whether the issue may be reviewed through plain error, because even if defendant's argument were preserved, he has not shown a denial of justice nor any prejudice resulting from the court's alleged omissions. For this reason, defendant has not established that the court's alleged errors mandate withdrawal of his guilty plea.

¶ 48    Again, "whether reversal is required for an imperfect admonishment depends on whether

real justice has been denied or whether the defendant has been prejudiced by the inadequate admonishment." *Fuller*, 205 Ill. 2d at 323. Here, even if the court failed to inform defendant that it could make a sentencing recommendation at the conclusion of the 402 conference that was subject to the parties' approval, defendant has offered no explanation how such a failure caused defendant to reject the State's prior offer. Indeed, the record indicates that the State offered defendant a 10-year sentence for a Class 2 offense, which fell squarely within the trial court's purported suggestion of 7 to 12 years, as recounted by the parties. Defendant rejected this offer. Given this timeline of events, it is unclear how defendant could have been prejudiced by the trial court's failure to advise him of the parties' rights to reject the court's sentencing recommendation, where the record shows that the State's offer, which incorporated the court's suggestion, was in fact rejected by defendant.

¶ 49    Defendant also suggests that the court's failure to give these admonitions rendered his guilty plea involuntary. The record starkly contradicts such an inference. Prior to defendant entering his guilty plea, the trial court explicitly advised defendant—numerous times—that despite what may have been previously discussed at the 402 conference, "all bets [were] off the table, and the [c]ourt ha[d] a clean slate of opportunities, options[,] or ranges" with which to sentence defendant. The court proceeded to lay out the nature of the charges against defendant, those charges' sentencing ranges, and other direct consequences stemming from the plea. Defendant confirmed his knowledge and understanding of the court's advisements and was given the opportunity to confer with counsel before entering his plea. Because the record indicates that defendant was thoroughly advised of the consequences stemming from his plea, defendant cannot convincingly argue that his plea was rendered involuntary as a result of the trial court's lack of Rule 402 admonishments.

¶ 50 Nonetheless, defendant further contends that, "prior to accepting the plea, the trial court made no record as to the results of the Rule 402 conference[,] and what the court's recommendations would be if [defendant] pled guilty." Defendant points out that neither defense counsel nor the trial court "made a record of any subsequent offers in [defendant's] case, to ensure that there was an accurate and complete account of all relevant circumstances surrounding the guilty plea." Instead, according to defendant, the trial court waited until defendant had already entered his guilty plea before attempting to make a record of the earlier 402 proceedings and to "inquire whether there were any 'representations by anyone as to what [a resulting] sentence might or could be.' " Defendant argues that, as a result of the trial court's failure, the court was unable to establish whether defendant's plea was voluntary, as required by Illinois Supreme Court Rule 402(b) (eff. July 1, 2012). Moreover, defendant argues that the court's failures contravened Rule 402's objective of "ensuring that there is an accurate and complete account of the plea process."

¶ 51 Regardless, because defendant cites no authority requiring the court to have recorded the results of the 402 conference, defendant is unable to show that the trial court erred, as necessary to preserve the issue under the plain error doctrine. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) ("[t]he first step of plain-error review is determining whether any error occurred"). We note that we have previously found that it is "best practices" for the parties and the court to record the results of any Rule 402 conference concerning a sentencing recommendation. *People v. Ferral-Mujica,* 2017 IL App (2d) 160240, ¶ 24. However, as the State points out, no portion of Rule 402(d), which defendant relied on in his briefs, explicitly required the trial court to record the results of the conference when no plea agreement was ultimately reached. Ill. S. Ct. R. 402(d)(1); (d)(2); (d)(3); *People v. Meza*, 376 Ill. App. 3d 787, 790 (2007). In his reply brief, defendant concedes as much. Because defendant has cited no authority establishing that the trial court erred

in failing to record the results of the instant 402 conference, this specific argument is forfeited, and the issue cannot be reviewed through plain error. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Thompson*, 238 Ill. 2d 598, 613 (2010).[3]

¶ 52                                    B. *Krankel* Hearing

¶ 53    Next, because the trial court correctly determined that defendant's posttrial claims of ineffective assistance of counsel lacked merit, it did not err in declining to appoint new counsel to defendant to further develop his claims. Pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), a court should not automatically appoint counsel to investigate a defendant's *pro se* posttrial claims of ineffective assistance of trial counsel. *People v. Jolly*, 2014 IL 117142, ¶ 29.

> "Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003).

¶ 54    The purpose of a preliminary *Krankel* hearing is "to facilitate the trial court's full

---

[3] Even if—hypothetically speaking—defendant were able to show that the court erred by not recording the results of the 402 conference, defendant still would not be able to show prejudice resulted from such an error. Again, prior to entering his plea, the court advised defendant that it was not bound by any sentencing recommendations made at the 402 conference. Consequently, defendant cannot show prejudice from the court's alleged failure to discuss any sentencing recommendations that the parties may have made at the conclusion of the 402 conference.

consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal." *Jolly*, 2014 IL 117142, ¶ 29. While the trial court must only determine whether the defendant's allegations show *possible* neglect, it may consider the merits of the defendant's contentions in their entirety when determining whether the appointment of new counsel is necessary. *People v. Jackson*, 2020 IL 124112, ¶ 105. In considering whether trial counsel was possibly neglectful, a court may also refer to its own knowledge of defense counsel's trial performance, testimony presented at the preliminary *Krankel* hearing, or the insufficiency of the defendant's allegations, as they appear on their face. *Moore*, 207 Ill. 2d at 78. "The operative concern for [a] reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Id.*

¶ 55    The question of whether a trial court properly conducted a *Krankel* preliminary inquiry should be reviewed *de novo*. *Jackson*, 2020 IL 124112, ¶ 98. However, where the trial court has properly conducted a preliminary *Krankel* inquiry and has considered the merits of a defendant's posttrial *Krankel* motion, we will reverse only if the trial court's decision was manifestly erroneous. *Id.* Because the trial court addressed the merits of defendant's claims, we follow this latter standard.

¶ 56    Here, defendant argues that the preliminary *Krankel* hearing uncovered several possible instances of defense counsel's neglect, thereby triggering the trial court's duty to impose new counsel to develop defendant's claims. Defendant points out that, at the preliminary *Krankel* hearing, defense counsel admitted his uncertainty whether he specifically told defendant that the State's 10-year plea offer pertained to a Class 2 felony that was subject to day-for-day credit. Defendant argues this admission indicated possible neglect, triggering the court's duty to appoint defendant with new counsel. However, as we have explained above, defendant has acknowledged

that he was aware that the State's plea offer involved a Class 2 felony, meaning defendant could not show prejudice resulting from defense counsel's alleged omission. *Cunningham*, 286 Ill. App. 3d at 351; *Moore*, 207 Ill. 2d at 77-78. Also, again, the prospect of day-for-day credit was a collateral consequence of the State's plea offer, so defense counsel's failure to convey such a prospect to defendant could not establish deficient performance. *Frison*, 365 Ill. App. 3d at 935; *La Pointe*, 2015 IL App (2d) 130451, ¶ 84. For these reasons, the trial court's conclusion that defense counsel's testimony did not indicate possible neglect was not against the manifest weight of the evidence. Accordingly, defendant cannot show that the trial court should have appointed im with counsel.

¶ 57 Defendant next argues that defense counsel's purported failure to advise defendant of the applicable ranges of MSR stemming from his guilty plea also indicated possible neglect. We disagree. The record indicates that, on June 14, 2019, before defendant entered his guilty plea, the trial court admonished defendant that "MSR [was] three years to natural life." Defendant confirmed that he understood as much. Because defendant was properly advised of the applicable MSR terms resulting from his plea, defense counsel's failure to advise defendant of those terms could not have resulted in prejudice, and the trial court was not required to appoint counsel to develop defendant's meritless claim. *Cunningham*, 286 Ill. App. 3d at 351; *Moore*, 207 Ill. 2d at 77-78.

¶ 58 Defendant further argues that the trial court should have found possible neglect from defense counsel's admission "that he never told [defendant] that the State's 10-year offer would be withdrawn if he did not accept it within a certain time frame." Even accepting that defense counsel may have failed to so advise defendant, as we have established numerous times above, defendant rejected the State's offer immediately upon hearing it, effectively terminating that offer.

*Henderson*, 211 Ill. 2d at 103. The offer could not have been later revived even if defendant attempted to accept it at a future date. *Id.* Therefore, defendant was not prejudiced by his ignorance of any deadline attached to the State's offer, and again, the trial court had no obligation to appoint counsel to develop defendant's meritless claim. *Cunningham*, 286 Ill. App. 3d at 351; *Moore*, 207 Ill. 2d at 77-78. For all of these reasons, the trial court's refusal to appoint counsel to defendant was not manifestly erroneous.

¶ 59                    C. Extended Term Sentence

¶ 60    Lastly, we agree with defendant that the trial court erred in imposing a four-year extended term sentence for defendant's unlawful restraint conviction. Our supreme court has held that, under section 5-8-2(a) of the Unified Code of Corrections (730 ILCS 5/5-8-2(a) (West 2014)) (Code), a defendant convicted of multiple offenses may only be sentenced to an extended[ ]term sentence for the most serious class of offenses. *People v. Bell*, 196 Ill. 2d 343, 350 (2001). "However, extended[ ]term sentences may be imposed 'on separately charged, differing class offenses that arise from *unrelated courses of conduct*.' " (Emphasis in original.) *Id.* (citing *People v. Coleman*, 166 Ill.2d at 257, 209 (1995)).

¶ 61    The parties disagree as to the applicable standard of review that we should employ in determining whether the trial court erred in imposing the extended term sentence. Citing *People v. Lindsay*, 247 Ill. App. 3d 518, 532 (1993), the State argues that we should utilize an abuse-of-discretion standard. However, as defendant correctly points out, *Lindsay* is distinguishable. There, this court reviewed whether the trial court properly considered a factor in aggravation to determine whether the defendant's behavior was brutal and heinous, as necessary to support the trial court's imposition of an extended term sentence. *Lindsay*, 247 Ill. App. 3d at 531. Here, on the other hand, we are not tasked with determining whether the trial court properly weighed such a factor in

aggravation. Instead, we determine whether defendant's extended term sentence was wrongfully imposed under section 5-8-2(a) of the Code.

¶ 62    Defendant instead argues that under *People v. Thompson*, 209 Ill. 2d 19, 23-24 (2004), this issue should be reviewed *de novo*. However, as the State correctly points out, *Thompson* involved an analysis as to whether the defendant's extended-term sentence was void or voidable under the now abolished void sentencing rule. *Id.* As with *Lindsay*, the issue in *Thompson* is distinct from the instant question that we must resolve. Therefore, *Thompson* offers us no guidance as to the appropriate standard of review that we should employ.

¶ 63    Although uncited by the parties, we find *People v. Robinson*, 2015 IL App (1st) 130837 to be instructive. There, the court found that " '[t]he determination of whether a defendant's actions constitute a single course of conduct' or is part of an unrelated course of conduct 'is a question of fact for the trial court to determine, and a reviewing court will defer to the trial court's conclusion unless that conclusion is against the manifest weight of the evidence.' " *Robinson*, 2015 IL App (1st) 130837, ¶ 102 (citing *People v. Hummel*, 352 Ill. App. 3d 269, 271 (2004)). Here, the trial court never explained its reasoning behind implementing the extended term sentence, nor did it even acknowledge the Code's applicable provisions. Because the record does not reveal the trial court's reasoning in this matter, we presume that it was aware of the law, and that it based its imposition of the extended term sentence on an application of section 5-8-2(a) of the Code. See *People v. Majer*, 131 Ill. App. 3d 80, 83 (1985) (finding a "presumption of regularity that attaches to all trial court proceedings" unless rebutted by the record). Therefore, like the *Robinson* court, we consider whether the court correctly determined that "defendant's actions constitute[d] a single course of conduct.' " *Robinson*, 2015 IL App (1st) 130837, ¶ 102 (citing *Hummel*, 352 Ill. App. 3d at 271). And so, pursuant to *Robinson,* we consider whether the trial court's decision was

against the manifest weight of the evidence. *Id.*

¶ 64    Once again, defendant acknowledges that his argument was not properly made before the trial court, which would normally result in the argument's forfeiture. *Estrada*, 394 Ill. App. 3d at 626. Nonetheless, defendant argues that this issue may be reviewed as plain error. While the State acknowledges that "this [c]ourt has held that the imposition of an extended-term sentence may be reviewed as plain error," it nonetheless suggests that the issue was not preserved, arguing that no error occurred here. Specifically, the State argues that defendant "has pointed to no *** misstatement of the law or erroneous belief [of the court] that is apparent on the record." The State further suggests that the extended term sentence was properly applied to defendant's unlawful restraint conviction, because defendant's unlawful restraint of M.G. evinced "a change in [defendant's] criminal objective."

¶ 65    We agree with defendant that the trial court's imposition of the extended term sentence amounted to plain error, preserving the issue for review. The plain error rule permits a reviewing court to consider certain errors that were not properly preserved in a criminal case. *People v. Heinz*, 407 Ill. App. 3d 1016, 1022 (2011). "Plain error exists when (1) the evidence is closely balanced; or (2) an error is so fundamental and of such magnitude that the defendant was denied a fair trial." *People v. Nelson*, 193 Ill. 2d 216, 222 (2000). Illinois courts have repeatedly found that the misapplication of an extended term sentence may be reviewed under the second prong of the plain error doctrine. *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 56 (2020); *People v. Palen*, 2016 IL App (4th) 140228, ¶ 78 (trial court's erroneous imposition of extended term sentence " 'affected [the] defendant's fundamental right to liberty' " (citing *People v. Smith*, 2016 IL App (1st) 140496, ¶ 15)); *Lindsay*, 247 Ill. App. 3d at 529; *People v. Lighthall*, 175 Ill. App. 3d 700, 705 (1988). Pursuant to this precedent, we consider defendant's contentions under the second prong of the

plain error doctrine.

¶ 66    Here, the trial court undoubtedly erred in imposing its extended term sentence onto defendant as a result of his unlawful restraint conviction. Again, a defendant convicted of multiple offenses may only be sentenced to an extended term sentence for the most serious class of offenses. *Bell*, 196 Ill. 2d at 350. As acknowledged by the parties, the unlawful restraint charge—which is classified as a Class 4 felony—was a less serious offense than the predatory criminal sexual assault charge—a Class X felony. 720 ILCS 5/10-3(b) (West 2014); 720 ILCS 5/11-1.40(b)(1) (West 2014). Therefore, the trial court could only impose an extended term sentence for defendant's unlawful restraint conviction if it was separately charged from the predatory criminal sexual assault charge and arose from an unrelated course of conduct distinct from that charge. *Bell*, 196 Ill. 2d at 350.

¶ 67    All the instant charges were brought forth under the grand jury's August 9, 2015, indictment. For this reason, the unlawful restraint conviction was not separately charged from the predatory criminal sexual assault charge, and the trial court's imposition of the extended term sentence was therefore against the manifest weight of the evidence as established by *Bell*. *Id.* While the State suggests that "no *** misstatement of the law or erroneous belief [of the court] *** is apparent on the record," the aforementioned indictment is certainly contained within the record, establishing that the defendant's charges were levied in the same charging instrument, which precluded the imposition of the extended term sentence.

¶ 68    Furthermore, despite the State's contentions, there is simply no colorable argument that defendant's unlawful restraint of M.G. was part of an unrelated course of conduct distinct from defendant's predatory criminal sexual assault charge. As our supreme court found in *Bell*:

        "[I]n determining whether a defendant's multiple offenses are part of an 'unrelated course

of conduct' *** courts must consider whether there was a substantial change in the nature of the defendant's criminal objective. If there was a substantial change in the nature of the criminal objective, the defendant's offenses are part of an 'unrelated course of conduct' and an extended-term sentence may be imposed on differing class offenses. If, however, there was no substantial change in the nature of the criminal objective, the defendant's offenses are not part of an unrelated course of conduct, and an extended-term sentence may be imposed only on those offenses within the most serious class." *Id.* at 354-55.

Clearly, defendant's unlawful restraint of M.G. was part of defendant's objective in carrying out the predatory criminal sexual assault offense. Prior to the assault, M.G. had been sleeping on a couch next to her cousin. Defendant removed M.G. from the couch and brought her down to the basement, where he assaulted her. These facts led to the unlawful restraint charges. Plainly, defendant brought M.G. downstairs so that he could assault her while evading detection from M.G.'s cousin, who had been asleep next to the child. Because both of defendant's convictions stemmed from the same course of conduct, the trial court's imposition of the extended term sentence was against the manifest weight of the evidence. Accordingly, we vacate defendant's extended term sentence.

¶ 69     In the event that we vacate the sentence, the parties both suggest that, in lieu of remanding the matter for a new sentencing hearing, we should instead impose an "appropriately-reduced term" pursuant to the standard Class 4 felony sentencing range of one to three years' imprisonment. 730 ILCS 5/5-4.5-45(a) (West 2020). Indeed, Illinois Supreme Court Rule 615 (eff. Sept. 15, 2021) gives us authority to "reduce the punishment imposed by the trial court." Because the trial court evinced an intent to sentence defendant beyond the maximum applicable sentence, we find that a three-year sentence is appropriate and sentence defendant accordingly.

¶ 70                                    III. CONCLUSION

¶ 71     For the reasons stated, we affirm the judgment of the circuit court of Winnebago County's January 10, 2020, order denying defendant's amended 604(d) motion to withdraw his plea, as well as the court's November 15, 2019, order refusing to appoint defendant new counsel following the preliminary *Krankel* hearing. We vacate the portions of the trial court's July 29, 2019, order imposing the extended term sentence for defendant's unlawful restraint conviction, and sentence defendant to three years' imprisonment for that offense.

¶ 72     Affirmed in part and vacated in part.